[No. B099119. Second Dist., Div. Five. Aug. 21, 1997.]

CATHERINE BRUNDAGE, Plaintiff and Appellant, v.
KENNETH P. HAHN, as Assessor, etc., Defendant and Respondent.

230

**COUNSEL**

Michael D. Flippin for Plaintiff and Appellant.

Collins, Collins, Muir & Traver and John J. Collins for Defendant and Respondent.

## Opinion

**GRIGNON, J.**—Plaintiff and appellant Catherine Brundage appeals from the summary judgment in favor of defendant and respondent County of Los Angeles Office of the Assessor in this employment discrimination action. Brundage sued County for terminating and refusing to reinstate her because of a mental disability. We conclude Brundage was terminated and not reinstated because she abandoned her job. That this job abandonment may have been the result of a previously undisclosed manic-depressive (bipolar) disorder does not constitute either disability discrimination or a refusal to provide a reasonable accommodation to a mental disorder. We affirm.

### Facts and Procedural Background

Brundage was employed by County as a deputy assessor from June 1988. Brundage was often absent from work for medical appointments, and received medical leave for a 14-day drug rehabilitation program in July and August 1993. She requested and received emergency vacation from November 22 to 24, 1993. Because of the Thanksgiving holiday, she was not due to return to work until November 29, 1993. She did not return.

A County employee telephoned Brundage's mother on December 2, 1993, and was told Brundage was still on vacation.

On December 7, 1993, a letter was sent to Brundage informing her that, unless she returned to work by December 13, or gave reasons justifying her absence, she would be deemed to have resigned her position. This letter was returned to County, as Brundage had moved.

On December 14, 1993, County sent another letter to Brundage, at both her old and new address, informing her that she was deemed to have resigned as of November 29, 1993. She was informed that she could obtain reinstatement within 20 days of the date of her resignation, if she provided good cause. She was told to request reinstatement in writing by December 20, 1993, and to provide evidence that she had been unable to work or communicate with County due to compelling circumstances beyond her control.

Brundage was not home to receive this letter. Instead, she was "gambling, eating, talking to people and driving around" in Nevada. In September 1993, she had been diagnosed as manic-depressive (bipolar disorder), but had not informed County of this diagnosis. On November 10, 1993, Brundage's prescribed dosage of Prozac had been doubled. Brundage believed that the

change in her prescription had triggered a manic episode, which had caused her disappearance and inability to contact County. However, she had been able to contact her mother. At one time during her disappearance, Brundage had telephoned her mother, who had informed her that County had called.

On January 1, 1994, Brundage presented herself at a hospital emergency room. She was admitted to the hospital. On January 7, 1994, she called her supervisor, Steve Rojas, and told him she was in a mental hospital. Rojas referred her to Nathan Schlossman, the acting senior personnel technician. On January 10, 1994, Brundage telephoned Schlossman and informed him she was in a mental hospital and she had been driving around aimlessly for the past six weeks due to a problem with her medication. She had not returned to her apartment so had not received notification of her deemed resignation. Schlossman told Brundage she was no longer employed by County and informed her of her civil service reinstatement rights. A meeting to discuss Brundage's reinstatement request was arranged when Brundage was discharged from the hospital.

The meeting was held on January 27, 1994. Brundage was given an opportunity to explain her absence. Her evidence consisted of a letter from John E. Nelson, M.D., which stated, in its entirety: "Catherine Brundage has been hospitalized under my care at Kaiser Mental Health Center from January 1, 1994, to [January 11, 1994] for bipolar disorder. This condition caused her to be in a state of mental confusion for approximately six weeks prior to this hospitalization, during which time she was unable to function adaptively or work at her usual job. [¶] She has now improved and should be able to return to work on January 20, 1994." County was not persuaded. Schlossman believed the letter was insufficient to justify Brundage's absence and failure to contact County. County wanted Brundage examined by an independent psychotherapist. Brundage consented to the evaluation, and also released her medical records to County.

On January 31, 1994, County wrote to Occupational Health Services, requesting a medical/psychological evaluation of Brundage. County sought this evaluation "because we would like to know if [Brundage's] explanation for her absence from November 29, 1993 to January 1, 1994 fits the alleged personality disorder. Medically, is everything she has told us true? If she can return to work, should any restrictions be placed on her? Does the alleged manic episode fully justify her failure to call to report/explain her absence in light of the fact that she called her mother a couple of times during the same period of time in which she failed to call us?"

Mark Reaves, Ph.D., performed the evaluation at the request of Occupational Health Services. He reported that Brundage's "history suggests that

the alleged mania was precipitated by the loss of a romantic relationship, but [Brundage] believes that Prozac caused the episode." Although Reaves concluded Brundage's current symptoms did not preclude a return to work, his evaluation did not address the extent to which Brundage may have been willfully negligent and accountable during her absence.

By letter of April 19, 1994, Brundage's request for reinstatement was denied. Brundage was informed that the information she had provided was "not of a sufficient or convincing nature" to justify reinstatement. Further, her request was denied because it was untimely under the applicable civil service rules, which allow a reinstatement request within 20 days of the deemed resignation. Brundage's appeal to the civil service commission was denied. She then brought this action.

*Allegations of the Complaint*

Brundage brought this action against County under the federal Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 et seq.) and the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), alleging County discriminated against her on the basis of disability. Particularly, she alleged County committed discriminatory acts in denying her reasonable accommodation, harassing her after she requested reasonable accommodation, terminating her and denying her reinstatement.

*Motion for Summary Judgment*

County moved for summary judgment on the ground Brundage could not establish a prima facie case of employment discrimination. County contended it had received no notice of Brundage's disability until after Brundage had been terminated, and Brundage's posttermination request for reinstatement was too late to be considered a request for reasonable accommodation.

Brundage opposed the motion for summary judgment on the ground the denial of reinstatement constituted a failure to provide a reasonable accommodation. Additionally she argued that, because her absence was caused by her disability, the termination based on her absence was likewise based on her disability.

The trial court granted the motion. Judgment was entered. Brundage filed a timely notice of appeal.

## Discussion

### I. *Standard of Review*

■ "The policy underlying motions for summary judgment and summary adjudication of issues is to ' "promote and protect the administration of justice, and to expedite litigation by the elimination of needless trials." ' " (*Hood* v. *Superior Court* (1995) 33 Cal.App.4th 319, 323 [39 Cal.Rptr.2d 296].)

"Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (Code Civ. Proc., § 437c, subd. (a).) The motion and the opposition to the motion "shall be supported by affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (*Id.*, subd. (b).) Separate statements setting forth plainly and concisely all material facts which the parties contend are undisputed must be included. (*Ibid.*) "Evidentiary objections not made at the hearing shall be deemed waived." (*Ibid.*) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence . . . and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted . . . on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (*Id.*, subd. (c); *KOVR-TV, Inc.* v. *Superior Court* (1995) 31 Cal.App.4th 1023, 1028 [37 Cal.Rptr.2d 431].)

A defendant or cross-defendant meets his or her burden upon a motion for summary judgment or summary adjudication if that party has proved "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (o)(2).) Once the defendant or cross-defendant has met that burden, the "burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists . . . ." In opposing the motion, the plaintiff or cross-complainant may not simply rely upon allegations or denials of the pleadings; the plaintiff or cross-complainant must set forth specific facts showing that a triable issue of material fact exists. (*Ibid.*; *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573 [37 Cal.Rptr.2d 653].)

■ On appeal, we exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial

court . . . ." (*Iverson* v. *Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35]; *Union Bank* v. *Superior Court, supra,* 31 Cal.App.4th at p. 579.) "[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it." (*Szadolci* v. *Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356]; accord, *Lorenzen-Hughes* v. *MacElhenny, Levy & Co.* (1994) 24 Cal.App.4th 1684, 1686 [30 Cal.Rptr.2d 210].)

## II. *ADA and FEHA*

Under the ADA, it is illegal to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." (42 U.S.C. § 12112(a).) A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." (*Id.,* § 12111(8).) A "disability" includes "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." (*Id.,* § 12102(2)(A).) A mental impairment can constitute a disability within the meaning of the ADA. (*Ibid.*) Discrimination under the ADA can include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such [employer]." (*Id.,* 12112(b)(5)(A).)

The FEHA likewise prohibits discrimination because of mental disability (Gov. Code, § 12940, subd. (a)) and requires employers to make reasonable accommodations to known disabilities, unless the accommodation would produce undue hardship (*id.,* subd. (k)). Because the FEHA provisions relating to disability discrimination are, in fact, based on the ADA and other federal law, decisions interpreting federal antidiscrimination laws are relevant in interpreting the FEHA's similar provisions. (*Prilliman* v. *United Air Lines, Inc.*(1997) 53 Cal.App.4th 935, 948 [62 Cal.Rptr.2d 142]; *County of Fresno* v. *Fair Employment & Housing Com.* (1991) 226 Cal.App.3d 1541, 1553 [277 Cal.Rptr. 557].) We therefore consider Brundage's state and federal disability discrimination claims together, and rely on federal authority in the absence of controlling state law.

III. *Termination*

■ State and federal law both analyze disability discrimination claims under a three-step framework. First, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. The employer then must offer a legitimate nondiscriminatory reason for the adverse employment decision. Finally, the plaintiff bears the burden of proving the employer's proffered reason was pretextual. (*Caldwell* v. *Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 196-197 [48 Cal.Rptr.2d 448]; *County of Fresno* v. *Fair Employment & Housing Com., supra,* 226 Cal.App.3d at p. 1543.) The plaintiff can establish a prima facie case by proving that: (1) plaintiff suffers from a disability; (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to an adverse employment action because of the disability. (*Morisky* v. *Broward County* (11th Cir. 1996) 80 F.3d 445, 447.)[1]

■ For purposes of this appeal, County does not contest that Brundage suffered from a disability or was subjected to the adverse action of termination. Instead, County sought summary judgment on the ground of the absence of any disputed issue of material fact regarding the nondiscriminatory motivation behind the termination decision. County asserts it is undisputed that Brundage was terminated because of her job abandonment. Brundage, on the other hand, claims her termination was a discriminatory act based on her mental disability, in that she was terminated because her manic-depressive disorder caused her to be absent from work for a six-week period. We agree with County.[2]

■ The ADA prohibits discrimination "because of" a disability. (42 U.S.C. § 12112(a).) An adverse employment decision cannot be made "because of" a disability, when the disability is not known to the employer. Thus, in order to prove an ADA claim, a plaintiff must prove the employer

---

[1]Some courts describe a plaintiff's prima facie case as: "(1) he or she suffers from a disability; (2) he or she is qualified for the job; (3) he or she was subject to an adverse employment action; and (4) he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees." (*Taylor* v. *Principal Financial Group, Inc.* (5th Cir. 1996) 93 F.3d 155, 162.) Perhaps the difference can be ascribed to the nature of the alleged disability discrimination. The precise nature of the prima facie case is not important in this case. It is well established that when there is no disputed issue of material fact regarding the employer's nondiscriminatory reason for the adverse employment decision, the employer is entitled to summary judgment. (*Caldwell* v. *Paramount Unified School Dist., supra,* 41 Cal.App.4th at pp. 202-203.)

[2]Brundage further contends she is a "qualified individual" because her absence was caused by her disability, which could be controlled with medication, and that she is otherwise qualified to work as a deputy assessor. County presented conflicting evidence on this issue. We need not decide whether Brundage's job abandonment rendered her unqualified as we conclude that, regardless of Brundage's qualification, she was terminated for a nondiscriminatory reason.

had knowledge of the employee's disability when the adverse employment decision was made. (*Taylor* v. *Principal Financial Group, Inc.*, *supra*, 93 F.3d 155, 163-164; *Morisky* v. *Broward County*, *supra*, 80 F.3d at p. 448; *Miller* v. *National Cas. Co.* (8th Cir. 1995) 61 F.3d 627, 629; *Hedberg* v. *Indiana Bell Telephone Co., Inc.* (7th Cir. 1995) 47 F.3d 928, 932-934.) While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts. "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." (*Morisky* v. *Broward County*, *supra*, 80 F.3d at p. 448 [plaintiff's illiteracy and history of special education classes insufficient to put employer on notice of developmental disability]; see also *Miller* v. *National Cas. Co.*, *supra*, 61 F.3d at pp. 629-630 [absenteeism, claims of stress, and a relative's statement employee was " 'mentally falling apart' " insufficient to put employer on notice of manic-depression]; *Larson* v. *Koch Refining Co.* (D.Minn. 1996) 920 F.Supp. 1000, 1005 [tardiness and poor work performance insufficient to impute knowledge of a disability]; *Carlson* v. *InaCom Corp.* (D.Neb. 1995) 885 F.Supp. 1314, 1322 [absenteeism and claims of occasional headache insufficient to impute knowledge of disabling migraine condition].)

In support of its motion for summary judgment, County submitted evidence that County employees had no knowledge of Brundage's manic-depressive disorder until January 1994, when she told them of her condition while hospitalized. Brundage attempted to create a triable issue of fact of County's imputed knowledge by demonstrating that County employees knew she had taken a substantial amount of leave for medical appointments. Brundage submitted copies of her leave requests for medical appointments. None of the documents even hinted at any mental disability. This evidence is therefore insufficient to impute knowledge to County of Brundage's manic-depressive disorder. Nor did Brundage claim that she directly informed any County employee of her disability. As such, there is no triable issue of fact as to County's actual or imputed knowledge. Because County did not know about Brundage's manic-depressive disorder, it could not have terminated her because of that disorder.

## IV. *Reinstatement*

Brundage next claims the denial of reinstatement was a discriminatory act. Brundage does not claim that the denial of reinstatement was discriminatory because County reinstated nondisabled individuals, but denied her reinstatement because of her disability. Instead, Brundage contends she had a right to reinstatement under the civil service rules of the Los Angeles County Code, because she had proven her absence was the result of her disability.

As a result of job abandonment, Brundage was deemed to have resigned her job. However, she had a right under the civil service rules to reinstatement under certain conditions. Los Angeles County Code section 5.12.020, subdivision (A)(2) provides that an employee who has been deemed to have resigned may be reinstated if the "appointing officer finds that there is good cause for the absence or failure to perform duties, such as bona fide illness, injury, or similar circumstances beyond the control of the . . . employee, and that such . . . employee is ready and able to resume the discharge of his duties." In denying reinstatement, County concluded Brundage had not established that her unexplained absence was due to her manic-depressive disorder. Brundage claims this conclusion was erroneous. However, even if County's conclusion Brundage's disability did not cause her unexplained absence was erroneous, such error would not constitute disability discrimination, but rather a faulty administrative decision subject to judicial review by a petition for writ of mandate under Code of Civil Procedure section 1094.5. County failed to reinstate Brundage not because of her manic-depressive disorder, but because it concluded her manic-depressive disorder had not caused her unexplained six-week absence from the job. County's conclusion that Brundage was not entitled to reinstatement is therefore not a separate discriminatory act actionable under the ADA, but rather an administrative decision reviewable, if at all, by administrative mandate. No such administrative mandate was sought by Brundage.

Alternatively, Brundage's request for reinstatement can be viewed as a request to reconsider her termination in light of the disclosure of her manic-depressive condition to County. To the extent Brundage's request for reinstatement is simply an attempt to relitigate the termination decision, its denial does not constitute a new discriminatory act and is therefore not actionable. (*Collins* v. *United Air Lines, Inc.* (9th Cir. 1975) 514 F.2d 594, 596.) Brundage argues that, at the time reinstatement was denied, County had knowledge of her disability and the causal connection between her disability and her absence. While this is undisputed, it is not dispositive. County's knowledge of Brundage's disability at the time of her request for reinstatement does not change the fact that Brundage was terminated for job abandonment, not because of her manic-depressive disorder. The denial of reinstatement simply upheld a proper termination.[3]

---

[3]Brundage contends, in passing, that she was denied reinstatement because of her prior status as a drug addict, which County learned from reviewing her medical files in the course of the reinstatement evaluation process. There is simply no evidence to support this inference. Indeed, Brundage concedes County knew of her drug addiction months prior to her termination when County granted her medical leave for a 14-day chemical dependency program. She does not argue that her original termination was based on her drug addiction.

## V. *Reasonable Accommodation*

Brundage further contends that reinstatement constitutes a "reasonable accommodation" to her mental disability. We are not persuaded by this contention.

■ "Reasonable accommodation" under the ADA may include "(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and [¶] (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." (42 U.S.C. § 12111(9).) The Equal Employment Opportunity Commission's interpretive statement explains that "[t]here are three categories of reasonable accommodation. These are (1) accommodations that are required to ensure equal opportunity in the application process; (2) accommodations that enable the employer's employees with disabilities to perform the essential functions of the position held or desired; and (3) accommodations that enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities." (29 C.F.R. pt. 1630, appen. to § 1630.2(o) (1996).)

"Reasonable accommodation" does not include excusing a failure to control a controllable disability or giving an employee a "second chance" to control the disability in the future. (*Siefken* v. *Village of Arlington Heights* (7th Cir. 1995) 65 F.3d 664, 666-667.) In *Siefken,* a probationary police officer had a diabetic reaction which resulted in disorientation and memory loss, which caused him to drive his squad car at high speed in residential areas outside his jurisdiction. He was terminated for this conduct. He sought a "second chance" to properly monitor his diabetes as a reasonable accommodation. The Seventh Circuit concluded the ADA did not require the employer to give the employee a second chance to properly monitor his disease. (*Ibid.*) The employee contended the error was not his, but his physician's. The appellate court held that even if this were true, the employer "should not be required to pay for [the employee's] physician's mistakes." (*Id.* at p. 666, fn. 2.) The appellate court held that "when an employee knows that he is afflicted with a disability, needs no accommodation from his employer, and fails to meet 'the employer's legitimate job expectations,' [citation], due to his failure to control a controllable disability, he cannot state a cause of action under the ADA." (*Id.* at p. 667.)

■ Brundage does not identify any "reasonable accommodation" to her disability which she contends should have been provided by County. Indeed,

she contends she is fully able to perform her job, if she were to be returned to regular duties.[4] She does not seek "accommodations that [would] enable [her] to perform the essential functions of the position held or desired"; instead, she wants her position back. This is simply not a "reasonable accommodation" under the ADA. Brundage does not ask that her disability be accommodated, she asks that job abandonment allegedly arising from the failure to control the disability be forgiven. The ADA does not mandate giving a second chance to an employee who abandoned her job.

DISPOSITION

The judgment is affirmed. Brundage is to pay County's costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

---

[4]Brundage argues County should provide "the reasonable accommodation of allowing her to take the medications now being prescribed for her bipolar condition, and further, by allowing her to continue with ongoing counseling and treatment for her disability with her current doctors." Neither "allowing" her to take prescription medications nor "allowing" her to continue counseling constitutes a reasonable accommodation under the ADA. There is no allegation Brundage (or any other County employee) was prohibited from taking prescription medication or attending counseling. Indeed, the record suggests otherwise. Brundage's true claim is that her disorder is now under control, and, if reinstated, she can perform her job.