Dennis SERVICE, Plaintiff,

v.

UNION PACIFIC RAILROAD COM-
PANY and Renzenberger, Inc.,
Defendants.

No. Civ. S98–2327 FCD DAD.

United States District Court,
E.D. California.

July 30, 2001.

Larry Lockshin, Barry Van Sickle, Richard A. Cohen, Larry Lochshin, A Law Corporation, Sacramento, CA, for plaintiff.

Michael L. Whitcomb, Michael L. Johnson, Union Pacific Railroad Company, Roseville, CA, for defendants.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

In count three of his Third Amended Complaint, plaintiff Dennis Service alleges that defendants Southern Pacific Transportation Company ("Southern Pacific") and Union Pacific Railroad Company ("Union Pacific") discriminated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the California Fair Employment and Housing Act ("FEHA"), Cal.Gov.Code § 12900 *et seq.*, by failing to reasonably accommodate his asthma.[1]

---

1. Defendant Renzenberger, Inc., is not a party to Count Three.

This matter is before the court on Union Pacific's motion for summary judgment as to this claim. For the reasons set forth below, Union Pacific's motion is denied.[2]

## BACKGROUND

### 1. Plaintiff's Employment

Plaintiff began his employment with Southern Pacific in 1963 as switchman, but transferred into engine service shortly thereafter. At all relevant time herein, plaintiff worked as a locomotive engineer, and as such, spent extended periods of time in the enclosed space of a locomotive cab. Union Pacific acquired Southern Pacific in 1996. Thereafter, plaintiff was employed by Union Pacific.

### 2. Plaintiff's Condition

Plaintiff was first diagnosed with asthma in the late 1970s. Initially his asthma was not particularly severe. His condition worsened over time, however, and in the late 1980s, he began to experience chest tightness, coughing, and shortness of breath when exposed to tobacco smoke at work. In 1986, plaintiff began asking his co-workers not to smoke when sharing a locomotive cab with him. Some co-workers complied with his requests; some did not.

Plaintiff first sought medical care for his asthma in the early 1990s. Plaintiff's allergist prescribed inhalers (bronchodilators) and gave him injections every ten days to two weeks for four years. The allergist also told him to avoid cigarette smoke. According to Dr. Harvey Sternberg, who has been treating plaintiff since April 1996, plaintiff's asthmatic attacks are potentially life-threatening. According to Dr. Sternberg, plaintiff "should stay away not just from actual cigarette smoke but

residue from cigarette smoke." *Id.,* 17:9–11.

### 3. Union Pacific's Smoking Policies

In 1991 or 1992, Southern Pacific instituted a no-smoking policy, after which time plaintiff's requests that co-workers not smoke in locomotive cabs were almost always successful. Plaintiff, however, continued to experience symptoms such as chest tightness, coughing, and shortness of breath when exposed to cabs containing smoke residue.

Although Union Pacific acquired Southern Pacific in late 1996, Southern Pacific's no smoking policy remained in effect until May 1, 1997. On May 1, 1997, Union Pacific instituted its own smoking policy, pursuant to which "smoking [was] permitted in locomotive cabs, cabooses, company and crew hauling vehicles only if all occupants [were] agreeable." Following this change in policy, plaintiff noticed a significant increase in the smell of smoke and the presence of smoking debris (including tobacco, ashes and butts) in locomotive cabs.

### 4. Plaintiff's Attacks And Reporting Of The Same

Although plaintiff suffered severe asthma attacks several times per year beginning in the late 1980s, he did not fill out an accident report until June 1994. On June 30, 1994, plaintiff filled out an injury report after suffering a severe asthma attack after being exposed to cigar smoke inside the Dunsmuir yard office. On December 12, 1995, plaintiff again suffered a severe attack after being exposed to tobacco smoke. He was rushed from work to the hospital by ambulance and missed several days of work as a result. Thereafter, plaintiff suffered severe asthmatic attacks

---

2. Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D.Cal. Local Rule 78–230(h).

on November 23, 1996, February 11, 1997, and May 19, 1997 and filled out injury reports following each attack.

On May 24, 1997, plaintiff suffered a severe asthmatic attack while working in a cab in which someone had recently smoked. Plaintiff was forced to stop operating a train. Plaintiff's conductor called the train dispatcher, and Union Pacific sent a taxi to take plaintiff to Mercy Medical Center in Redding.

### 5. Union Pacific's Response to Plaintiff's Condition

Following plaintiff's attack on May 24, 1997, Union Pacific placed a "medical block" on plaintiff's return to work. Thereafter, Union Pacific informed plaintiff that he could not return to work until he had a conference with Carl Bradley, Union Pacific's superintendent of operations for the "Roseville Hub" area. On June 23, 1997, plaintiff attended a meeting with Bradley, Manuel Mora, plaintiff's local union chairman, and Union Pacific officials Carlos Sanchez and Mike Shannon, to discuss plaintiff's asthmatic condition and his sensitivity to cigarette smoke. At this meeting, Bradley assured plaintiff that no one would smoke in a locomotive cab in plaintiff's presence. As to plaintiff's sensitivity to residual smoke, Bradley suggested that plaintiff use an air freshener. Bradley based this advice on an e-mail he received earlier that month from Betty Prax, an employee in Union Pacific's Health Services Department. Prax noted that, according to plaintiff's treating physician, plaintiff should avoid cigarette smoke. According to Prax, "entering an enclosure where someone has smoked, but is not presently smoking, is not exposure to cigarette smoke, but to the smell of cigarette smoke. Perhaps an air freshner [sic], or deodorizer could be carried by Mr. Service for use in situations where he finds the smell to be annoying."

Plaintiff and Mora suggested that an appropriate accommodation to plaintiff's asthma would be for Union Pacific to obey an existing California statute which provides that no employer shall permit the smoking of tobacco products in an enclosed space at a place of employment. *See* Cal. Lab.Code § 6404.5(b). This suggestion was repeated in a letter sent by Mora to Bradley in July 1997. Union Pacific rejected this request.

### 6. Plaintiff's Return To Work

Union Pacific instituted a company-wide no-smoking policy on February 1, 1999. Plaintiff returned to work on August 9, 1999.

### 7. The Instant Action

In count three of his Third Amended Complaint, plaintiff claims that Union Pacific discriminated against him in violation of the ADA and the FEHA by failing to reasonably accommodate his asthma by depriving him of a smoke-free locomotive cab.

### STANDARD

■ Summary judgment is appropriate if the record, read in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## ANALYSIS

### 1. Americans With Disabilities Act (ADA)

The ADA prohibits employers from discriminating against a disabled employee by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless the accommodation would impose an "undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A). The ADA defines a "qualified individual with a disability" as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individuals holds or desires." 42 U.S.C. § 12111(8). Union Pacific contends that summary judgment should be granted as to plaintiff's claim under the ADA because: (1) plaintiff cannot establish that he was "disabled" under the ADA, and (2) even if plaintiff is disabled within the meaning of the ADA, Union Pacific reasonably accommodated plaintiff's disability.

### A. "Disabled"

Plaintiff is "disabled" within the meaning of the ADA if he has "a physical or mental impairment that substantially limits one or more of [his] major life activities." [3] 42 U.S.C. § 12102(A). Such a determination is to be made on a case-by-case basis. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 480, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (quoting EEOC's "Interpretive Guidance," 29 C.F.R. pt. 1630,

app. § 1630.2(j)). Union Pacific does not dispute that plaintiff's asthma constitutes a physical impairment within the meaning of the ADA. Accordingly, the issue is whether plaintiff's asthma substantially limits one or more of his major life activities.

Breathing is a major life activity. 29 C.F.R. § 1630.2(i). To determine whether plaintiff is substantially limited in a major life activity, the court must assess whether he is significantly restricted, compared to the average person in the general population, as to the "condition, manner, or duration" under which he can perform that same major life activity. 29 C.F.R. § 1630.2(j). In making such an assessment, the court may consider the nature and severity of the impairment, the duration of the impairment, and the permanent or long-term impact of or resulting from the impairment. *Id.*

Plaintiff has produced evidence that exposure to tobacco smoke and its residue causes him to suffer severe asthma attacks necessitating the use of medication and sometimes hospitalization. Union Pacific argues that plaintiff's asthma does not substantially limit his breathing because it can be controlled through mitigating measures, namely by using inhalers and taking hot showers. Although the court must consider any factors that may mitigate plaintiff's impairment, the presence of mitigating measures does not mean that an individual is not protected by the ADA. *Sutton,* 527 U.S. at 488, 119 S.Ct. 2139. Rather, an individual may still be substantially limited in a major life activity, notwithstanding the use of a corrective device like medicine, which may only lessen the symptoms of an impairment. *Id.* In other words, "the use or nonuse of a corrective device does not determine whether an indi-

---

**3.** An employee may also be "disabled" under the ADA if there is "record of such an impairment" or if he is regarded as having such an

impairment. Plaintiff only claims that he has an actual impairment.

vidual is disabled; that determination depends on whether the limitations an individual with an impairment *actually* faces are in fact substantially limiting." *Id.*

Here, plaintiff cannot "cure" his asthma or prevent an asthmatic attack by using an inhaler or by taking hot showers. Plaintiff can only use these mitigating measures after an attack has already begun to help cope with his condition, and even then his asthma cannot always be controlled. While these measures may lessen the duration of plaintiff's attacks, they do not lessen the limitations he faces when exposed to tobacco smoke or its residue.

■ Union Pacific's contention that plaintiff's asthma is not sufficiently severe also lacks merit. Plaintiff need not suffer an attack every time he is exposed to smoke or smoke residue in order to be "disabled" under the ADA. Plaintiff has produced evidence that he suffers symptoms such as chest tightness, coughing, and shortness of breath when exposed to smoke and smoke residue and that he suffered six severe attacks between June 1994 and May 1997. Moreover, plaintiff's treating physician considers his attacks life threatening. This evidence, at a minimum, creates a triable issue of fact as to whether plaintiff's condition is sufficiently severe.

■ Finally, Union Pacific's assertion that plaintiff's condition is "temporary" is also without merit. Plaintiff need not be in a constant state of distress or suffer an asthmatic attack to qualify as disabled under the ADA.

Based on the above, the court easily finds that genuine issues of material fact exist as to whether plaintiff's asthma substantially limited his major life activity of breathing.[4]

## B. "Reasonable Accommodation"

■ Having found triable issues of material fact exist as to whether plaintiff's asthma substantially limits his ability to breathe, the court must consider whether Union Pacific reasonably accommodated his asthma. A reasonable accommodation includes "modifications or adjustments to the work environment ... that would enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(*o*)(1)(ii). The ADA requires that employers engage in a good-faith interactive process with employees in order to identify and implement appropriate reasonable accommodations. *Barnett v. U.S. Air*, 228 F.3d 1105, 1111 (9th Cir.2000); *Humphrey*, 239 F.3d at 1137. The interactive process requires communication and good faith exploration of possible accommodations between the employer and the individual employee, without delay or obstruction by either side. *Barnett*, 228 F.3d at 1114–15. An employer's duty to engage in an interactive process is triggered "either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation." *Id.*

Union Pacific was aware of plaintiff's asthmatic condition and sensitivity towards cigarette smoke at least as early as June 1994 when plaintiff submitted his first injury report. Plaintiff filed additional injury reports on November 23, 1996, February 11, 1997, May 19, 1997, and May 24, 1997. Union Pacific was aware of plaintiff's sensitivity to smoke residue no later than May 24, 1997 when plaintiff explained in his injury report that he suffered a severe asthma attack as a result of someone

---

4. Because the court finds a triable issue of fact exists as to whether plaintiff is substantially limited in his major life activity of breathing, the court need not evaluate wheth-er he is also substantially limited in his major life activity of working. *Humphrey v. Memorial Hosp. Ass'n*, 239 F.3d 1128, 1135 (9th Cir.2001).

"smoking in cab of locomotive prior to my taking over the train."

The only evidence of any attempt by Union Pacific to engage in an interactive process is the June 23, 1997 meeting between plaintiff, Bradley, and officials from Union Pacific and the union. At that meeting, Bradley assured plaintiff that no one would smoke in a cab in his presence. Even if this partial ban on smoking reasonably accommodated plaintiff's inability to deal with smoke, it is undisputed that Union Pacific did virtually nothing to accommodate plaintiff's sensitivity to smoke residue. The only "accommodation" offered by Union Pacific was an air freshener. This accommodation was based on Union Pacific's apparent belief that smoke residue merely annoyed plaintiff. The reasonableness of this belief is questionable as the asserted cause of the asthmatic attack which precipitated the meeting was "smoking in the cab ... prior to [plaintiff] taking over." At a minimum, plaintiff has raised a triable issue of material fact as to whether Union Pacific reasonably accommodated his asthma.

■■■ Finally, an employer need not accommodate an employee if doing so would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A). An undue hardship is defined as "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A). Union Pacific argues that providing plaintiff with an "irritant free environment" is an undue hardship. Plaintiff did not request an irritant free environment; rather, he requested a smoke-free work environment. Union Pacific has failed to provide any evidence to show that providing plaintiff with a smoke-free work environment would have consti-

tuted an undue hardship. Indeed, its implementation of a no smoking policy in 1999 indicates that such an accommodation would not have imposed an undue hardship.[5]

## 2. California Fair Employment and Housing Act (FEHA)

■■■ Courts use federal court decisions concerning the ADA to interpret analogous provisions of the FEHA in the absence of contrary or differing state law. *Humphrey*, 239 F.3d at 1133, n. 6 (citing *Brundage v. Hahn*, 57 Cal.App.4th 228, 235, 66 Cal.Rptr.2d 830 (1997)). The court need not determine whether a recent amendment to the FEHA, which specifies that a physical impairment need only limit (as opposed to substantially limit) a major life activity, applies retroactively, as the court finds a triable issue of material fact exists as to whether plaintiff's asthma *substantially* limits his ability to breathe. Because triable issues of fact exist as to whether Union Pacific discriminated against plaintiff in violation of the ADA, triable issues of material fact also exist as to Union Pacific's liability under the FEHA.

## CONCLUSION

1. Defendant Union Pacific's motion for summary judgment as to count three of plaintiff's Third Amended Complaint is DENIED.

IT IS SO ORDERED.

---

5. Union Pacific's failure to accede to plaintiff's request for a smoke-free cab may also have been illegal. *See* Cal.Lab.Code § 6404.5(b). The court need not determine whether this law applies to Union Pacific, herein, as plaintiff has already demonstrated the existence of genuine issues of material fact regarding Union Pacific's failure to reasonably accommodate plaintiff's asthma on other grounds.