**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANTONIO ALAMILLO, *Plaintiff-Appellant,* v. BNSF RAILWAY COMPANY, *Defendant-Appellee.* | No. 15-56091 D.C. No. 2:14-cv-08753-SJO-SS OPINION |

Appeal from the United States District Court
For the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted April 7, 2017
Pasadena, California

Filed August 25, 2017

Before: Milan D. Smith, Jr. and N.R. Smith, Circuit
Judges, and Gary Feinerman, District Judge.[*]

Opinion by Judge Feinerman

---

[*] The Honorable Gary Feinerman, United States District Judge for
the Northern District of Illinois, sitting by designation.

**SUMMARY**[**]

**California's Fair Employment and Housing Act**

The panel affirmed the district court's summary judgment in favor of BNSF Railway Company in a former employee's action alleging that BNSF terminated him from his job as a locomotive engineer in violation of the California Fair Employment and Housing Act ("FEHA").

The panel held that the appellant failed to establish that BNSF discriminated against him base on his disability – obstructive sleep apnea (OSA) – under FEHA. The panel applied the three-step burden-shifting test in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and held that appellant's claim failed at the first step – establishing a prima facie case of discrimination – because the record contained no evidence that appellant's OSA was a substantial motivating reason for BNSF's decision to terminate him. The panel also held that even if appellant had made a prima facie case of discrimination, his claim would fail at the third step because appellant had not offered evidence that BNSF's stated reason – appellant's history of attendance violations – was either false or pretextual. The panel concluded that BNSF did not engage in unlawful discrimination by declining to alter appellant's disciplinary outcome, termination, based on his OSA diagnosis.

The panel held that BNSF did not violate its reasonable accommodation duty under FEHA. The panel rejected

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

appellant's claim that BNSF failed to engage in the interactive process after his attendance violations had already occurred, because no reasonable accommodation could have cured his prior absenteeism at that point.

## COUNSEL

Robert M. Kitson (argued), The Myers Law Group A.P.C., Rancho Cucamonga, California, for Plaintiff-Appellant.

Ronald Wayne Novotny (argued) and Ann K. Smith, Atkinson Andelson Loya Ruud & Romo, Cerritos, California, for Defendant-Appellee.

## OPINION

FEINERMAN, District Judge:

Plaintiff-Appellant Antonio Alamillo filed this suit against Defendant-Appellee BNSF Railway Company (BNSF), claiming that it terminated him from his job as a locomotive engineer in violation of the California Fair Employment and Housing Act (FEHA), Cal. Gov. Code § 12940 *et seq*. The district court granted summary judgment to BNSF, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2012, Alamillo worked as a locomotive engineer for BNSF. Due to his seniority, he had the choice to work either (1) a five-day-per-week schedule with regular hours or (2) on the "extra board," which requires employees to come to work only when called. Alamillo chose to work on the

extra board from January 2012 through June 2012. If an extra board employee failed to answer or respond to three phone calls from BNSF within a single 15-minute period, the employee would be deemed to have "missed a call" and marked as absent for the day. BNSF's attendance policy provided that a fifth missed call during any twelve-month period "may result in dismissal."

Alamillo missed a call on ten dates in 2012: January 28, January 29, January 31, March 16, March 18, March 20, April 23, May 13, May 21, and June 16. He chose to receive "Alternative Handling" for the three January missed calls, which meant that he received additional training instead of discipline. After his next four missed calls, Alamillo received a 10-day suspension and a 20-day suspension. At that point, Richard Dennison, the superintendent of the terminal where Alamillo worked, advised him to get a landline or a pager (he had given BNSF only a cell phone number) to ensure that he would not miss another call.

Alamillo did not give BNSF a pager or landline phone number; he was having an affair at the time, and he did not want BNSF to call a landline number because there were occasions when he left the house to see his girlfriend when his wife thought he was at work. Nor did Alamillo (1) seek transfer to a five-day-per-week job; (2) set his alarm for 5:00 a.m., the most common time for BNSF to call, like he had done when he previously worked on the extra board; (3) ask his wife to wake him up if his mobile phone rang while he was sleeping; or (4) check the electronic job board to see the jobs for which he could be called the next day. Sure enough, he missed three more calls.

At some point after his final missed call on June 16, Alamillo began to suspect that he was experiencing a medical problem. At a June 19, 2012 meeting with BNSF

California Division General Manager Mark Kirschinger, Alamillo mentioned that he intended to undergo testing for a possible sleep disorder. Alamillo asked Kirschinger if he could switch to a job with set hours; Kirschinger told him to follow the usual procedures to bid on a regular five-day-per-week work schedule, but added that the disciplinary process for his previous missed calls would proceed. Alamillo then switched to a regular schedule and was able to wake up to his alarm clock and arrive at work on time every day.

Alamillo completed a sleep study on July 29 and was diagnosed with obstructive sleep apnea (OSA) by Dr. Kiumars Saketkhoo on August 16. He was prescribed a Continuous Positive Airway Pressure (CPAP) machine, and his symptoms immediately improved. On or about August 18, Alamillo provided Dennison with a report from Dr. Saketkhoo with his diagnosis.

BNSF often handles employee discipline by holding an investigation hearing to determine whether a violation occurred. Where, as here, dismissal is a possible sanction, the transcript of the hearing is sent to BNSF's Labor Relations Department for review. Alamillo's hearings for the May 13, May 21, and June 16 missed calls occurred on August 22. Alamillo discussed his OSA diagnosis at the hearings and submitted Dr. Saketkhoo's medical opinion that not being awakened by a ringing phone is "well within the array of symptoms" of OSA. However, no medical professional opined that the May 21 and June 16 missed calls actually were caused by his OSA.

BNSF Director of Labor Relations Andrea Smith reviewed Alamillo's employee transcript, the hearing transcripts, and the hearing exhibits before rendering her opinion that Alamillo should be given a 30-day suspension for the May 13 missed call and be dismissed for the May 21

and June 16 missed calls. Kirschinger, the BNSF officer responsible for making the final decision, approved the dismissal. Alamillo was told on September 18 that he was being dismissed for the May 21 and June 16 missed calls. Alamillo's union appealed his dismissal and prevailed, and he was reinstated to service.

Alamillo filed this suit against BNSF for wrongful termination in violation of public policy, based on underlying violations of the FEHA. He claims that BNSF discriminated against him on the basis of his disability, failed to accommodate his disability, and failed to engage in an interactive process with him to determine a reasonable accommodation for his disability. *See* Cal. Gov. Code §§ 12940(a), (m)(1), (n). The district court granted summary judgment to BNSF, reasoning that BNSF could not have violated the FEHA because Alamillo's attendance violations took place before he was diagnosed with a disability and before any accommodation was requested. *See Alamillo v. BNSF Ry. Co.*, No. CV 14-08753 SJO (SSx), 2015 WL 11004494 (C.D. Cal. June 16, 2015).

## DISCUSSION

### I.   Disability Discrimination Claim

The FEHA makes it unlawful "[f]or an employer, because of the … physical disability … of any person, … to discharge the person from employment," unless the employee "is unable to perform his or her essential duties even with reasonable accommodations." Cal. Gov. Code §§ 12940(a), (a)(2). "A prima facie case for discrimination on grounds of physical disability under the FEHA requires [the] plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability."

*Faust v. Cal. Portland Cement Co.*, 58 Cal. Rptr. 3d 729, 745 (Cal. Ct. App. 2007) (internal quotation marks omitted). "[A]n employer has treated an employee differently 'because of' a disability when the disability is a substantial motivating reason for the employer's decision to subject the employee to an adverse employment action." *Wallace v. Cty. of Stanislaus*, 199 Cal. Rptr. 3d 462, 475 (Cal. Ct. App. 2016); *see also Harris v. City of Santa Monica*, 294 P.3d 49, 66 (Cal. 2013) (same). For purposes of FEHA claims, California has adopted the three-step burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), such that:

> On a motion for summary judgment … the plaintiff bears the burden of establishing a prima facie case of discrimination based upon physical disability, and the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. Once the employer has done so the plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated.

*Faust*, 58 Cal. Rptr. 3d at 745.

Alamillo's claim fails at the first step—establishing a prima facie case—because the summary judgment record contains no evidence that his OSA was "a substantial motivating reason for" BNSF's decision to terminate him. *Wallace*, 199 Cal. Rptr. 3d at 475. Indeed, the parties appear

to agree that Alamillo's OSA made no difference whatsoever to BNSF's disciplinary outcome.  BNSF did not know that Alamillo was disabled when the decision to initiate disciplinary proceedings was made, and Alamillo concedes that BNSF "disregarded" his disability when it decided to terminate him.

Even if Alamillo had made a prima facie case of discrimination, his claim would fail at the third step of the *McDonnell Douglas* test.  BNSF asserts that it dismissed Alamillo because of his recurrent absenteeism, and Alamillo has not "offer[ed] evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated." *Faust*, 58 Cal. Rptr. 3d at 745.  Alamillo's pretext argument is based entirely on emails in which Smith recommended that Alamillo be dismissed for his May 21 and June 16 missed calls and Kirschinger agreed with the recommendation.  The sole reference in those emails to Alamillo's disability appears in Smith's discussion of the June 16 missed call: "Mr. Alamillo entered documentation to support his argument that he has sleep apnea; this was allegedly the reason he did not hear his phone ring.  While certain arbitrators could be sympathetic, he did not seek assistance until after he faced dismissal (this would be his second dismissal), which is arguably too late." In other words, Smith considered the possibility that sleep apnea may have prevented Alamillo from hearing his phone and refused to change her decision on that basis.  That is not evidence "which would permit a reasonable trier of fact to conclude the employer intentionally discriminated." *Id*.  To the contrary, it reinforces the conclusion that BNSF's articulated nondiscriminatory reason for firing Alamillo—

his history of attendance violations, which culminated in the May 21 and June 16 missed calls—was sincere.

To support a different result, Alamillo cites *Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128 (9th Cir. 2001), in which we observed that "[f]or purposes of the ADA [Americans with Disabilities Act], … conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Id*. at 1139–40. (Alamillo did not bring an ADA claim, but ADA decisions are "relevant" in interpreting the FEHA. *Brundage v. Hahn*, 66 Cal. Rptr. 2d 830, 835 (Cal. Ct. App. 1997) (citing cases).) The plaintiff in *Humphrey*, who suffered from obsessive compulsive disorder (OCD), was terminated—purportedly for absenteeism—after she began engaging in ritualistic behavior that made her late for work. *Humphrey*, 239 F.3d at 1130, 1139; *see also id.* at 1135 ("[T]he process of washing and brushing her hair alone could take several hours, and she at times would prepare for work from eight o'clock in the morning until five or six o'clock in the evening."). We reversed the district court's grant of summary judgment to the defendant employer because "a jury could reasonably find the requisite causal link between a disability of OCD and Humphrey's absenteeism and conclude that [the employer] fired Humphrey because of her disability." *Id*. at 1140. Alamillo argues by analogy that a jury could find that same connection between his OSA and his absenteeism to support the conclusion that BNSF fired him because of his disability.

Alamillo's reliance on *Humphrey* is unavailing because, on the record before us, no reasonable jury could find "the requisite causal link" between Alamillo's OSA and his attendance violations. In *Humphrey*, the plaintiff's absenteeism was the direct result of her OCD. *See id*. at

1132 ("Humphrey's evaluation indicates that were it not for her ailment, she would have been a model employee."). Moreover, months before her final set of absences, Humphrey presented her employer with medical evidence that her absenteeism directly resulted from her OCD. *Id*. at 1131 (describing a doctor's letter stating that Humphrey's OCD "is directly contributing to her problems with lateness").

The record here is entirely different. Alamillo has adduced no evidence that OSA caused the particular missed calls at issue. His physician stated only that not being awakened by a ringing phone falls "within the array of symptoms" of OSA, not that there was direct causation in Alamillo's case. Moreover, unlike the plaintiff in *Humphrey*, Alamillo easily could have taken steps that would have allowed him to appear for work despite his disability: exercising his option to work a job with regular hours; checking the electronic job board every day; setting his alarm for 5:00 a.m.; asking his wife to wake him up if his phone rang while he was sleeping; or providing BNSF with a landline or pager number to use as a back-up if he did not answer his cell phone. Thus, Alamillo's OSA may have been a contributing factor to his attendance violations, but *only* due to his own non-OSA-related carelessness and inattention. BNSF therefore did not engage in unlawful discrimination by declining to alter Alamillo's disciplinary outcome based on his OSA diagnosis.

## II. Reasonable Accommodation and Interactive Process Claims

In addition to prohibiting discrimination based on disability, the FEHA makes it unlawful for an employer to "fail to make reasonable accommodation for the known physical … disability of an … employee," Cal. Gov. Code

§ 12940(m)(1), or to "fail to engage in a timely, good faith, interactive process with the employee … to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical … disability or known medical condition," Cal. Gov. Code § 12940(n). "Reasonable accommodation" is defined as "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Scotch v. Art Inst. of Cal.-Orange Cty., Inc.*, 93 Cal. Rptr. 3d 338, 358 (Cal. Ct. App. 2009) (quotation marks omitted); *see also* Cal. Gov. Code § 12926(p) (providing examples of "reasonable accommodation"). "'Reasonable accommodation' does not include excusing a failure to control a controllable disability or giving an employee a 'second chance' to control the disability in the future." *Wills v. Superior Court*, 125 Cal. Rptr. 3d 1, 20 n.4 (Cal. Ct. App. 2011) (quotation marks omitted); *see also Brundage*, 66 Cal. Rptr. 2d at 838.

Alamillo argues that BNSF violated its reasonable accommodation duty because it failed to do any of these three things after his final missed call but before the termination decision was made: "(1) change [Alamillo] to a constant work schedule, (2) [choose] the non-mandatory termination option in light of the circumstances, and (3) [offer] leniency in light of the circumstances."

The first proposed accommodation does not give rise to a reasonable accommodation claim because BNSF actually made that accommodation, switching Alamillo, at his request, to a job with regular hours. The second and third proposed accommodations—essentially, that BNSF not terminate him for prior misconduct—do not qualify as reasonable accommodations under California law. As noted

above, "a 'second chance' to control the disability in the future" is not a reasonable accommodation. *Wills*, 125 Cal. Rptr. 3d at 20 n.4; *see also Brundage*, 66 Cal. Rptr. 2d at 838; EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (EEOC ADA Enforcement Guidance), *available at* 2002 WL 31994335, at *25 ("Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability."); *cf. Atkins v. City of Los Angeles*, 214 Cal. Rptr. 3d 113, 134 & n.7, 139 (Cal. Ct. App. 2017) (citing the EEOC ADA Enforcement Guidance in interpreting the FEHA's reasonable accommodation requirement). Alamillo's reasonable accommodation claim is therefore meritless.

The interactive process claim fails for similar reasons. "To prevail on a claim … for failure to engage in the interactive process, an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." *Scotch*, 93 Cal. Rptr. 3d at 365. The FEHA does not impose liability for failure to engage in the interactive process when no reasonable accommodation is possible. *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 83 Cal. Rptr. 3d 190, 216 (Cal. Ct. App. 2008). Alamillo maintains that BNSF failed to engage in the interactive process after his attendance violations had already occurred, but no reasonable accommodation could have cured his prior absenteeism at that point. It necessarily follows that no reasonable jury could find in Alamillo's favor on the interactive process claim.

## CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.  Appellant shall bear costs on appeal.  Fed. R. App. P. 39(a)(2).