Filed 7/29/14  Gonzalez v. Envoy Mortgage CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LILLIAN MARI GONZALEZ, Plaintiff and Appellant, v. ENVOY MORTGAGE LTD. ET AL., Defendants and Respondents. | A135936 (Contra Costa County Super. Ct. No. MSC1002506) |

Lillian Mari Gonzalez (appellant) appeals from a summary judgment entered in favor of Envoy Mortgage, Ltd. (Envoy) and Peggy Valley (Valley) (together, respondents) in her employment discrimination action.  She contends the trial court erred in granting summary judgment because there were triable issues of fact as to whether she was terminated due to her disability and whether Envoy engaged in the interactive process and reasonably accommodated her.  We reject her contention and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 5, 2009, Valley, the Branch Manager for the Concord, California branch of Envoy, hired appellant as a Senior Mortgage Banker at that branch.  Appellant reported to Valley.  As a Senior Mortgage Banker, appellant was responsible for retail mortgage loan originations.  She went into the office for the first two months of employment because her personal laptop work computer had crashed and she could not work from home.  However, she was not required to go into the office and could perform

1

her job duties almost entirely from outside the office. Appellant's employment was "expressly" at-will, and she "absolutely" understood she was employed at-will.

Upon hire, appellant agreed to the terms in Envoy's offer letter and also executed a loan officer agreement. She agreed, among other things, that the "mutually shared expectations for the levels of mortgage loan originations" were that she would achieve a minimum of two loans per month totaling $500,000 in amount.[1] Appellant originated only two loans during her seven months of employment with Envoy—one $396,000 loan on June 5, 2009, and one $318,000 loan on September 9, 2009.[2] Appellant acknowledged she never met the minimum funding level; she responded, "No" when asked at her deposition whether she, "[a]t any time during [her] employment with Envoy," "achieve[d] the target of two units of $500,000 [per month]."

On or about June 14, 2009, appellant informed Valley that she was being admitted to the hospital for meningitis.[3] Valley did not know the nature or symptoms of meningitis. Two days later, appellant told Valley she was being released from the hospital. Appellant did not provide Envoy with any medical documentation of her hospital stay, medical condition and/or permanent or long-term work restrictions. The hospital discharged her in "good condition with a good prognosis" and without any restrictions. Appellant's treating physician did not give her any "restrictions" following

[1]On March 4, 2009, before appellant signed the offer letter and agreement, Valley sent an email to appellant addressing appellant's concern "about coming on and not making the numbers." Valley said, "these days are hard times. I understand the concern but it won't be for always . . . Once [banks 'open their doors to Mortgage Bankers'] . . . there will be . . . [a lot] more business to be had by 2010. Then we will be looking for the standards we seek. All I ask is do your best."

[2]The second loan funded on October 5, 2009, after appellant had been terminated from her employment with Envoy.

[3]Appellant stated in her declaration that she "began experiencing severe headaches, vertigo, and extreme fatigue" in May 2009. She declared she "spoke to both . . . Valley and [Assistant Manager] Matthew Steinmetz of these on-going conditions."

her discharge from the hospital and stated, "if it did not hurt her and she wasn't too dizzy, she could do it." The day after her discharge from the hospital, appellant informed Valley that, "[d]ue to [her] illness," she would need Valley's help "to reschedule some of [her] appointments." Appellant told Valley that she would be in home care for 10 days and would not be going into the office as much during that period.[4]

Valley followed up with appellant during these 10 days and also communicated with her frequently during her brief hospital stay. During their telephone conversations, appellant did not request any other accommodation, such as a leave of absence or a reduction in her workload; according to appellant, "[all mortgage bankers] worked on [their] own time [anyway]."

On July 9, 2009, appellant emailed Valley and Assistant Manager Matthew Steinmetz to inform them that she was working on "30 [loans] in the pipeline and 10 closing[s] a month." On July 28, 2009, appellant sent Valley and Steinmetz another email that she had been "packing and getting ready to move," but that she was "working on email advertising to motivate some new business with the local realtors and with the Spanish speaking realtors thru association." Appellant did not mention in either of these emails that she was suffering from any illness, or any illness that necessitated work restrictions or accommodations.

On August 4, 2009, Valley sent appellant an email stating, "[s]ince March you have closed only 1 loan. This is not in compliance with your contract with our office. If we cannot get this turnaround [sic] immediately, I will have no choice but to terminate your contract effective 8/31/09 due to non-compliance." Appellant testified at her

---

[4]Appellant states in her opening brief that she "informed [Valley] that she was being discharged to Home Care from June 20, 2009 to August 18, 2009." The two record citations she provides, however, do not support this statement. The first record citation is an excerpt from appellant's deposition showing she informed Valley of a 10 day home care period. The second record citation is a medical document authorizing home care for appellant from June 20, 2009 to August 18, 2009. The document, however, does not show that appellant informed Valley of that longer home care period.

3

deposition that she did not receive this email until September 14, 2009. Valley stated in a declaration that the fact that appellant had closed only two loans totaling $714,000 during her seven months of employment with Envoy was unacceptable, particularly because appellant was a Senior Mortgage Banker with twelve and a half years of experience.

On September 10, 2009, appellant sent an email to Valley stating, "I have a doctor's appointment on the 20th. I need to be checked. I am still having health issues and [am] emotionally beat up." On September 11, 2009, Valley sent an email to appellant, stating, "Lillian, after reviewing your contract and current performance since my email on August 4, 2009, I am making a tough decision to terminate your employment with Envoy Mortgage effective 9/30/09." Around the time of appellant's termination, Valley also terminated two other employees—neither with any known or perceived disabilities—for non-compliance with minimum loan targets.

On September 11, 2009, the day she received notice of her termination, appellant visited her doctor. Her doctor's internal notes from that visit indicated she was "having no residuals from her aseptic meningitis, specifically, no headaches, visual changes, difficulty sleeping." Appellant's doctor did not recommend any limitations on her ability to work at that time. On September 21, 2009, appellant met with her doctor who placed her on disability leave from June 16, 2009 to November 1, 2009. On September 21, 2009, appellant's doctor completed a disability notice on her behalf with the California Employment Development Department (EDD). Valley submitted the form to Envoy's human resources manager, and he confirmed receipt.

On October 6, 2009, appellant emailed Envoy's human resources manager asking if he had received a copy of her disability notice, and requesting reinstatement of her employment in light of that fact. Envoy denied her request. In the summary judgment proceedings, Envoy objected on foundation and relevancy grounds to appellant's evidence that she provided notice to Envoy of her disability *after* she was notified of her termination on September 11, 2009. The trial court sustained Envoy's objections.

4

Specifically, the trial court excluded evidence of: (1) the September 21, 2009 disability benefits claim form completed by appellant's doctor and submitted to the EDD; (2) appellant's communication of the EDD notice to Envoy's human resources department; (3) Envoy's human resources department's response to appellant's communications; and (4) appellant's post-termination communications with the Department of Fair Employment and Housing.[5]

On September 8, 2010, appellant filed an action against Envoy and Valley under the Fair Employment and Housing Act (FEHA) for disability discrimination, race and disability harassment, failure to engage in the interactive process and failure to accommodate, failure to prevent discrimination and harassment, retaliation, wrongful termination and intentional infliction of emotional distress.

In the disability discrimination cause of action, appellant alleged that Envoy "made numerous decisions based on [its] knowledge and/or belief of appellant's Medical Disability and/or Perceived Disability," including subjecting her to harassment based on her disability, failing to accommodate her, and terminating her employment. In her cause of action for failure to accommodate, appellant alleged that Envoy refused to accommodate her despite the fact that she asked Envoy to "make reasonable accommodation for her disability by providing her with leave and/or a reduced work schedule and requirements." In her cause of action for failure to engage in the interactive process, appellant alleged that Envoy failed to participate in "a timely good-faith interactive process with [appellant] to determine whether reasonable accommodation could be made . . . ."

Envoy filed a motion for summary judgment or summary adjudication. It submitted Valley's declaration and excerpts from the transcripts of Valley, appellant,

[5]Appellant discusses this evidence in her opening brief without explaining that it was excluded. On appeal, she does not challenge any of the trial court's rulings excluding this evidence, and we therefore do not discuss the evidence further.

appellant's treating physician, and Envoy's human resources manager's depositions. Envoy also submitted appellant's employment contract and several email communications between appellant and Envoy personnel. In her declaration, Valley stated she never perceived appellant as disabled during her employment and "had absolutely no knowledge that [appellant] was disabled when [she] made the decision to terminate her employment . . . ." Valley stated that appellant's poor work performance and low production were the reasons for her termination. Valley also stated that around the time she terminated appellant, she terminated two other employees, neither of whom were disabled or perceived as disabled, for the same reasons, i.e., poor work performance and low production. Valley declared that appellant never complained of any discrimination or harassment due to any claimed disability, and that she did not know, until the day after appellant was terminated, that appellant was claiming any discrimination based on disability. Envoy argued it could not be liable for disability discrimination in the absence of any evidence that it knew appellant claimed to be suffering from a disability. Envoy further argued that appellant's termination was based on a legitimate business reason and not on any discriminatory motive.

With respect to the causes of action for failure to accommodate and failure to engage in the interactive process, Envoy argued there were no triable issues regarding these claims due to the absence of any evidence that Envoy had knowledge of any disability. Envoy further argued that the evidence established that it had granted the modest and temporary accommodation requests appellant had made in connection with her hospitalization and following her home care period in June 2009.

In her opposition to the summary judgment motion, appellant argued that her June 2009 communications with Valley regarding her meningitis diagnosis and hospitalization were sufficient to put Envoy on notice that she had a disability. With respect to the reason for her termination, appellant argued that Envoy's proffered reasons

6

for terminating her were pretextual because Valley had sent her an email stating appellant would not be held to the contractual monthly funding requirements for the first year.

The trial court granted Envoy's summary judgment motion. As to the disability discrimination claim, the court found there was no triable issue that Envoy had knowledge of appellant's claimed disability prior to her termination. Knowledge of an illness and hospitalization were insufficient to show a disability, "given the lack of evidence that [appellant]'s meningitis necessarily caused her to be disabled." The court also granted summary adjudication of the disability discrimination claim on the ground that appellant had failed to overcome Envoy's showing of a legitimate, non-discriminatory reason for her termination. The court noted that appellant had submitted evidence that "Valley informed her upon hire that the [two loans per month/$500,000] sales quota in her offer letter was flexible." However, because appellant did not dispute that she closed only two loans during the entire time she was employed at Envoy, the court concluded "it is reasonable to infer that [appellant]'s performance fell below even the lowered standards that Valley initially set forth." As to the failure to accommodate and the failure to engage in the interactive process causes of action, the court found appellant had failed to submit any evidence that Envoy refused any illness-related accommodation appellant had requested or that Envoy had failed to communicate with appellant regarding her illness. Judgment was entered on May 10, 2012.

**DISCUSSION**

Appellant contends the trial court erred in granting summary judgment because there were triable issues of fact as to whether she was terminated due to her disability and whether Envoy engaged in the interactive process and reasonably accommodated her. We disagree.

*Legal Standards*

A court may grant a summary judgment only if "there is no triable issue of material fact and the moving party is entitled to judgment in its favor as a matter of law."

(Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) Once the defendant makes that showing, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (*Id.*, subd. (p)(2).)

In an employment discrimination case, an employer may move for summary judgment against a discrimination cause of action with evidence of a legitimate, nondiscriminatory reason for the adverse employment action. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 357 (*Guz*); *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097–1098 (*Kelly*).) A legitimate, nondiscriminatory reason is one that is unrelated to prohibited bias and that, if true, would preclude a finding of discrimination. (*Guz, supra*, 24 Cal.4th at p. 358.) The employer's evidence must be sufficient to allow the trier of fact to conclude that it is more likely than not that one or more legitimate, nondiscriminatory reasons were the sole basis for the adverse employment action. (*Kelly, supra*, 135 Cal.App.4th at pp. 1097–1098.)

By presenting such evidence, the employer shifts the burden to the plaintiff to present evidence that the employer's decision was motivated at least in part by prohibited discrimination.[6] (*Guz, supra*, 24 Cal.4th at pp. 353, 357; *Kelly, supra*, 135 Cal.App.4th at p. 1098.) The plaintiff's evidence must be sufficient to support a reasonable inference

[6]This burden-shifting test is derived from the three-stage burden-shifting test established by the United States Supreme Court for use at trial in cases involving claims of employment discrimination based on disparate treatment, known as the McDonnell Douglas test (*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668]; *Guz, supra*, 24 Cal.4th at pp. 354, 357.) A plaintiff has the initial burden at trial to establish a prima facie case of employment discrimination. (*Id.* at p. 354.) On a summary judgment motion, in contrast, a moving defendant has the initial burden to show that a cause of action has no merit (Code Civ. Proc., § 437c, subd. (p)(2)) and therefore has the initial burden to present evidence that its decision was motivated solely by legitimate, nondiscriminatory reasons. (*Kelly, supra*, 135 Cal.App.4th at pp. 1097–1098.)

that discrimination was a substantial motivating factor in the decision.  (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232; *Guz*, *supra*, at pp. 353, 357.)  The stronger the employer's showing of a legitimate, nondiscriminatory reason, the stronger the plaintiff's evidence must be in order to create a reasonable inference of a discriminatory motive.  (*Guz*, at p. 362 & fn. 25.)

"[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct.  [Citations.]  While the objective soundness of an employer's proferred reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*.  Thus, 'legitimate' reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding *of discrimination*."  (*Guz*, *supra*, 24 Cal.4th at p. 358.)

We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent.  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)  The employee's evidence, however, "remains subject to careful scrutiny."  (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 (*King*).)  The employee's "subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations."  (*Ibid.*)  The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, an actual causal link between prohibited motivation and termination.  (*Id*. at pp. 433–434; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 774.)

### *Knowledge of Disability*

FEHA provides that it is unlawful for an employer to discharge a person "because of" a physical disability or medical condition.  (Gov. Code, § 12940, subd. (a).)  As such, an employer is not liable for disability discrimination if it had no knowledge of an

9

employee's alleged disability or perceive the employee as disabled prior to the termination. (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 236–237 (*Brundage*); *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1046 [no FEHA retaliation claim without knowledge that the employee engaged in protected conduct]; *Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1145 [no FEHA disability discrimination claim based on pregnancy "in the absence of evidence the employer knew the employee was pregnant"].)

Knowledge of the claimed disability also is an element of causes of action for failure to accommodate and failure to engage in the interactive process. (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 349 (*Arteaga*) [lack of knowledge of disability defeats failure to accommodate claim]; *King*, *supra*, 152 Cal.App.4th at p. 443 [employer is not liable for failing to accommodate a disability of which it has no knowledge]; *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 954 (*Prilliman*) ["Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge"]; Gov. Code, § 12940, subd. (n) [an employer is required to engage in a "timely, good faith, interactive process . . . in response to a request for reasonable accommodation by an employee . . . with a *known* physical . . . disability or known medical condition"], italics added.) The employee has the duty to inform the employer of her disability. (*Brundage*, *supra*, 57 Cal.App.4th at p. 237.)

Here, Envoy presented ample undisputed evidence that it did not know appellant was disabled at the time it terminated her employment. Valley, who supervised appellant and was in communication with her during and after appellant's hospitalization, declared that she did not perceive appellant as disabled, and did not know the nature or symptoms of appellant's illness. There was no evidence that appellant provided any medical documentation of her hospital stay, medical condition, and/or permanent long-term work restrictions before being terminated. Other than asking for help in rescheduling some appointments, and informing Valley of a short home care period, appellant did not

10

communicate to Envoy that her illness impaired her ability to do her job in any way.  In fact, just weeks after her hospitalization, appellant informed Valley of her marketing efforts and her plans to increase her productivity, thereby giving the impression that she was not impaired in her ability to do her job.  Appellant also stated in her July 28, 2009 email that she was in the process of moving, and mentioned nothing about restricted work hours or other medically-related work impairment or restriction.  Thus, appellant's communications with Valley merely provided Envoy with notice of a temporary, transitory illness that had, at most, a minimal and short-term impact on her ability to perform her work.

Appellant asserts that her September 10, 2009 email to Valley in which she mentioned she had "health issues" and was feeling "emotionally beat up" created a triable issue of fact regarding Envoy's knowledge.  It is settled, however, that vague statements regarding an " 'unspecified incapacity are not sufficient to put an employer on notice of its obligations under the' " FEHA.  (*Brundage*, *supra*, 57 Cal.App.4th at p. 237.)  In *Brundage*, therefore, the employer was not charged with knowledge of a disability where the employee had a substantial amount of leave for her medical appointments and had received medical leave for a 14-day drug rehabilitation program, as well as an emergency vacation leave.  (*Id*. at p. 231.)  Although the employee had been diagnosed as a manic depressive, she had not informed her employer of that fact, and the employer was therefore deemed to have no knowledge, despite the numerous absences, of the employee's mental disability.  (*Id*. at pp. 232–233, 237.)  The court in *Brundage* held: "While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is *the only reasonable interpretation of the known facts*."  (*Id*. at p. 237, italics added.)

Similarly, the mere fact that an employee is ill is insufficient to put the employer on notice of a disability. " ' "The touchstone of a qualifying [physical] disability is an actual or perceived physiological disorder which affects a major body system and limits the individual's ability to participate in one or more major life activities." ' " (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1248 (*Avila*).) Thus, knowledge that an employee has a certain medical condition or has undergone hospitalization is not sufficient to put the employer on notice that the employee has a disability, that is, that the medical condition or treatment has impaired the employee's ability to perform her job functions. (*Id.* at p. 1249 [that the employee was hospitalized for three days for a pancreatic disorder "was not sufficient to put [employer] on notice that [he] was suffering from a qualifying disability"]; *Arteaga*, *supra*, 163 Cal.App.4th at p. 350 [employee's complaints of persistent pain and numbness were insufficient to put employer on notice of a disability because the medical condition "did not affect the achievement of [the employee's] job duties"].)

Accordingly, even though Envoy was aware of appellant's hospitalization and her request for some assistance, that evidence was insufficient to put Envoy on notice that appellant was suffering from a qualified disability. In other words, Envoy's knowledge that appellant was ill and had been hospitalized was not the same as knowing she was disabled. (*Avila*, *supra*, 165 Cal.App.4th at p. 1249.) Because the fact of disability was not "the only reasonable interpretation of the known facts," Envoy was entitled to summary judgment on both the disability discrimination cause of action and for its alleged failure to engage in the interactive process and accommodate her disability. (*Id.* at pp. 1248–1249.)[7]

---

[7]*Foster v. City of Oakland* (N.D.Cal. 2009) 649 F.Supp.2d 1008 (*Foster*), on which appellant relies, is distinguishable. In *Foster*, an employee suffered severe cognitive and neurological impairments after being attacked at work. (*Id.* at p. 1012.) He was initially limited by his doctor to two hours of work per day, and repeatedly informed his employer that his work assignments were too strenuous given his "concussion-related

### *Reason for Termination*

Summary judgment was proper for the additional reasons that Envoy presented undisputed evidence of a legitimate reason for terminating appellant, i.e., her low work performance, and that appellant failed to respond with sufficient evidence of pretext. Envoy presented evidence that appellant closed only two loans totaling $714,000 during her entire employment period with Envoy, and that the production was well below what was expected of a Senior Mortgage Banker with twelve and a half years of experience. Envoy also presented evidence tending to show that appellant's termination was not based on her disability because it also terminated two other, non-disabled employees with substandard production around the same time it terminated appellant.

Envoy's evidence shifted the burden to appellant to present "substantial responsive evidence" of discrimination, that is, that Envoy's proffered reason was pretextual. (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1730–1732.) To show an employer's reason for termination is pretextual, an employee " 'cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.' " (*Hersant v. Dept. of Social Services* (1997) 57 Cal.App.4th 997, 1005.) To meet her burden, the employee " 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," ' " and hence infer " 'that the employer did not act for [the asserted] non-discriminatory reasons.' "

issues." (*Id.* at pp. 1012, 1018–1019.) There was a triable issue as to whether the employer had knowledge of the employee's disability because the employer knew about the attack, and the injuries made it obvious that the employee was disabled. (*Id.* at p. 1019.) In contrast, here, appellant's symptoms were far less severe and visible, and appellant had not informed Envoy that she was suffering any ongoing impairment in her ability to work as a result of her illness.

(*Ibid.*; *King*, *supra*, 152 Cal.App.4th at pp. 433–434 [employee's evidence must show "an actual causal link between prohibited motivation and termination"].).)

Envoy's lack of knowledge that appellant had a disability precludes an inference of a causal link between a prohibited motivation—disability discrimination—and appellant's discharge. In addition to failing to present evidence of knowledge, however, appellant also failed to present any evidence that her termination was motivated by her medical condition. On appeal, appellant relies on two pieces of evidence in an effort to show that Envoy's stated reason for her termination was pretextual. First, she points to the March 4, 2009 email from Valley to appellant stating that the contractual loan targets did not apply in 2009 due to the sluggish economy. However, appellant fails to dispute not only that she never met the contractual loan targets for any of the six months of her employment at Envoy, but also that she closed only two loans for the entire duration of her employment. Based on this evidence, the trial court reasonably inferred that appellant's "performance fell below even the lowered standards that Valley initially set forth." The March 4, 2009 email therefore did not create a triable issue regarding a causal link between appellant's termination and her illness.

Second, appellant asserts that the fact that Envoy terminated her on September 11, 2009, just one day after she informed Valley that she was still having "health issues," shows Envoy had a discriminatory motive. As noted, however, the September 10, 2009 email was insufficient to place Envoy on notice that appellant was claiming to have a disability. In any event, "temporal proximity alone is not sufficient to raise a triable issue as to pretext." (*Arteaga*, *supra*, 163 Cal.App.4th at p. 353; *King*, *supra*, 152 Cal.App.4th at p. 436.) "This is especially so where the employer raised questions about the employee's performance *before* he disclosed his symptoms, and the subsequent termination was based on those performance issues." (*Arteaga*, *supra*, 163 Cal.App.4th at p. 353.) Thus, even setting aside the fact that the September 10, 2009 was inadequate to notify Envoy of a disability, the timing of that email and appellant's termination did

14

not support an inference of pretext, in light of the fact that Valley had warned appellant on August 4, 2009, that she would be terminated unless she improved her performance immediately.[8]

Appellant also argues that discriminatory animus can be inferred from "Valley's disregard for Appellant's illness" because Valley had an obligation to ascertain whether appellant's low productivity was a result of her illness, and she failed to ask more questions. An employer, however, has no affirmative duty to investigate whether an employee's illness might qualify as a disability. "The employee bears the burden of giving the employer notice of his or her disability." (*Avila*, *supra*, 165 Cal.App.4th at pp. 1248, 1252.)

Summary judgment was proper in light of the undisputed evidence showing that an essential element of appellant's prima facie case—knowledge or perception of a disability—was lacking, and that her termination was based on legitimate, non-discriminatory motives—her low production in funding loans.

---

[8]Appellant claims on appeal that she never received Valley's August 4, 2009 warning email because it was sent to a non-working email address. In any event, she testified at her deposition, however, that she received the email on September 14, 2009. Valley's nondiscriminatory motive was evidenced by the fact that she sent the email; whether appellant received it or not, had no bearing on Valley's motive, absent evidence suggesting that Valley intentionally sent the email to a non-working email address.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

_____
McGuiness, P.J.


We concur:


_____
Siggins, J.


_____
Jenkins, J.