Filed 6/10/15  Hollis v. Federal Express CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SHAWN HOLLIS, | B255907 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC491567) |
| v. | |
| FEDERAL EXPRESS CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debre Katz Weintraub, Judge.  Affirmed.

Golan Law and Jeremy M. Golan for Plaintiff and Appellant.

Carol Dwyer DeFreitas, Federal Express Corporation, for Defendant and Respondent Federal Express Corporation.

_____

## INTRODUCTION

Plaintiff and appellant Shawn Hollis was employed as a part-time material handler by defendant and respondent Federal Express Corporation (Fed Ex). He was terminated from his position after he missed more than two months of work while he suffered from back and leg pain. Hollis sued Fed Ex under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.),[1] alleging that, among other things, the company discriminated against him on the basis of physical disability. The trial court granted Fed Ex's motion for summary judgment, finding Hollis did not adequately inform the company of any disability before he was terminated. The court entered judgment in Fed Ex's favor, and Hollis appealed. We affirm.

## FACTUAL BACKGROUND

### 1. *Fed Ex's Attendance Policy*

Fed Ex requires its employees to maintain a minimum 96.9 percent attendance record. If an employee's attendance falls below the minimum requirement, Fed Ex issues the employee a performance reminder. If an employee receives three performance reminders in a 12-month period, Fed Ex may terminate his or her employment.

Under Fed Ex's attendance policy, only unexcused absences count against an employee's attendance record. Fed Ex has two policies governing unexpected absences for medical reasons: a Medical Absence Policy and a Medical Leave Policy. Under the Medical Absence Policy, an employee who misses seven consecutive days or less of work due to an unexpected medical reason receives pay for those days missed. Although the employee receives pay under this policy, the absences are counted against his or her attendance record. If the employee is unable to return to work following the seven consecutive days allotted under the Medical Absence Policy, he or she is placed on the Medical Leave Policy. Under that policy, the employee does not receive pay for any

---

[1] All further statutory references are to the Government Code unless otherwise specified.

2

days missed beyond those allotted under the Medical Absence Policy, but those absences are not counted against the employee's attendance record.

Fed Ex also has a leave policy through which an employee may request an unplanned personal leave of absence without pay (personal leave policy), which excuses the employee's absences during that period of leave. Fed Ex management has discretion to grant or deny an employee's personal leave request based on an evaluation of the expected impact the absences will have on the company's performance.

2. *Hollis's Employment*

Fed Ex hired Hollis as a part-time material handler in 1994. Hollis typically worked five four-hour shifts a week. At some point during his employment, he began experiencing occasional back and leg pain. He never reported this pain to his supervisors until immediately before his leave of absence leading to his termination.

During the 18 years he worked at Fed Ex, Hollis received 11 performance reminders for poor attendance. Throughout 2011 and early 2012, Hollis missed work several times for various reasons. In June 2011, he missed a week of work without authorization and received a performance reminder informing him that his attendance had fallen below Fed Ex's minimum attendance requirement. In September and October 2011, Hollis missed several more days of work without authorization and received a second performance reminder informing him that his attendance had again fallen below Fed Ex's minimum requirement. After receiving his second performance reminder in less than 12 months, Hollis executed a performance agreement acknowledging he understood that if he received another performance reminder by June 2012 his employment would be terminated.

In December 2011, Hollis missed another period of work, but he was granted personal leave to prevent his absences from counting against his attendance record. In February 2012, Hollis unexpectedly missed a day of work due to a family medical emergency. Although he did not request time off before missing work, Fed Ex granted his request for personal leave to prevent his absence from counting against his attendance record. When Hollis returned to work, his supervisor, Shawna Jackson, instructed him to

3

avoid any further absences because they could result in discipline under Fed Ex's attendance policy.

### 3. Hollis's Injury and Leave of Absence

In March 2012, Hollis began experiencing severe pain in his back and legs after he injured himself while parking his motorcycle. On March 13, 2012, he reported to work at Fed Ex, but, due to the pain in his back and legs, he had difficulty performing his job duties. After Jackson observed Hollis struggling with his work, she suggested that he report to the company's wellness center to be examined. While Jackson helped Hollis walk to the wellness center, he explained to her the pain he was experiencing. After remaining in the wellness center for two hours, Hollis was cleared to return home. Jackson clocked Hollis out and helped him walk to his car.

On March 14, 2012, Hollis visited a chiropractor, Dr. Dilojan Abayaratna. Dr. Abayaratna diagnosed Hollis with sciatic neuralgia, or sciatica. Sciatica is a series of symptoms, including numbness, tingling, and pain in the leg, which results from a pinched, compressed, or irritated sciatic nerve. Because Hollis's sciatica caused him difficulty walking and standing upright, Dr. Abayaratna placed him on bed rest.

Hollis remained off work due to his sciatica and lower back pain from March 14 through June 19, 2012. During that period, he submitted to Fed Ex several notes from Dr. Abayaratna. Two of the notes, dated March 14 and March 21, 2012, stated that Hollis was under Dr. Abayaratna's care and noted under the "Additional remarks" section: "Lower back pain." Six of the notes, each entitled "Doctor's Excuse," stated that Dr. Abayaratna "recommend[ed] that [Hollis] be excused from work" for the period between March 14 and June 19, 2012. Three of the "Doctors Excuse" notes also stated under the "Additional remarks" section either "Lower back pain" or "Continues to have recurring lower back pain." The other three "Doctor's Excuse" notes did not indicate the reason why Dr. Abayaratna recommended that Hollis remain off work. None of the notes indicated what was causing Hollis's back pain; whether Hollis could actually perform his job duties at Fed Ex; or whether he required any medical restrictions if he were to return to Fed Ex.

4

Hollis notified Jackson each time he submitted one of Dr. Abayaratna's notes. However, he never informed Jackson or anyone else at Fed Ex that he had any physical or work restrictions while he was on leave.

On March 15, 2012, Jackson sent an email to a worker in Fed Ex's human resources department inquiring about how she should handle Hollis's leave of absence. On March 16, 2012, Jackson emailed Fed Ex's human resources advisor to inform her of Hollis's status. The email stated: "[T]his employee [Hollis] reported into work in pain and worked until he could not do it anymore. He was sent to the wellness center barely able to walk due to sciatic nerve problems. He is now under the doctors [sic] care and cannot afford to miss time. His last occurrence was in October[.] [I]s there anything we can do instead of termination?"

Hollis was placed on leave under Fed Ex's Medical Absence Policy from March 14 through March 20, 2012. Hollis was paid for the days he missed work during that period, but his absences were counted against his attendance record. On March 21, 2012, Hollis was placed on leave under Fed Ex's Medical Leave Policy. On March 28, 2012, Fed Ex sent Hollis a letter outlining his rights and duties while on medical leave. Hollis remained on medical leave until June 20, 2012. Hollis's absences while on leave under the Medical Leave Policy were not counted against his attendance record. While on leave, Hollis never requested an accommodation for his back injury, and he never requested to be placed on Fed Ex's personal leave policy. Hollis testified he understood his first week of absences would be counted against his attendance record unless he was placed on personal leave.

### 4. Hollis's Suspension

On June 20, 2012, Dr. Abayaratna cleared Hollis to return to work. As of that date, Dr. Abayaratna believed that Hollis could perform his material handler duties at Fed Ex without any medical restrictions.

That same day, Fed Ex suspended Hollis while Jackson investigated whether to issue him a third performance reminder. According to Jackson, the first day of Hollis's

5

absences, March 14, 2012, caused his attendance rating to drop below Fed Ex's minimum attendance requirement.

On July 5, 2012, after reviewing Hollis's attendance record and consulting with Fed Ex's human resources department, Jackson issued Hollis a third performance reminder and a termination letter. The letter explained that the first week of Hollis's leave, March 14 through March 20, 2012, was counted against his attendance record, causing his attendance record to fall below Fed Ex's minimum requirement. The letter further explained that, as a result of Hollis's deficient performance, Fed Ex was issuing Hollis his third performance reminder in a 12-month period. Fed Ex terminated Hollis's employment because he had received three performance reminders in a 12-month period.

After Fed Ex terminated Hollis's employment, Dr. Abayaratna sent the company a letter dated July 5, 2012, explaining the reason for Hollis's extended absence. The letter stated that Dr. Abayaratna had treated Hollis for lower back pain and sciatic neuralgia since March 14, 2012. Dr. Abayaratna had placed Hollis on temporary work disability and ordered him to engage in little to no activity until his condition improved. According to the letter, Hollis was temporarily totally disabled from March 14 through June 20, 2012 and subject to the following work restrictions: "Refrain from heavy lifting, frequent bending at the hips/pelvis and/or lumbar spine, twisting movements and prolonged sitting/standing." The letter also stated that after June 20, 2012, Hollis was subject to "minimal restrictions." The letter did not define the term "minimal restrictions." None of this information, except for the fact that Dr. Abayaratna was treating Hollis for lower back pain, was communicated to Fed Ex prior to Hollis's termination.

   5. *Hollis's Internal Appeals*

Hollis appealed his termination using Fed Ex's Guaranteed Fair Treatment Procedure, which provides for a three-strep review process for certain adverse employment actions, including termination. At each level, Hollis explained that he had missed work between March and June 2012 because he had experienced severe pain in his lower back and legs as a result of his sciatica. He also provided his review panels with Dr. Abayaratna's July 5, 2012 letter. All three panels denied Hollis's appeals,

6

finding that he either did not suffer from a disability while he was absent from work or that he had failed to notify Fed Ex of any disability he may have suffered before the company terminated his employment.

## PROCEDURAL BACKGROUND

In September 2012, Hollis filed a complaint against Fed Ex, alleging six causes of action stemming from his termination: (1) disability discrimination (§ 12940, subd. (a)); (2) failure to reasonably accommodate his disability (§ 12940, subd. (m)); (3) failure to engage in a good-faith interactive process (§ 12940, subd. (n)); (4) failure to take all reasonable steps to prevent discrimination (§ 12940, subd. (k)); (5) retaliation (§ 12940, subd. (h)); and (6) wrongful termination in violation of public policy.

Fed Ex moved for summary judgment or in the alternative summary adjudication. Fed Ex argued Hollis could not prevail on any of his claims because either he was not disabled during his medical leave of absence or Fed Ex was not aware that he was disabled during that period. Fed Ex also argued Hollis could not prevail on his discrimination claim because the company had a legitimate, business-related reason for terminating Hollis, namely enforcement of its neutral attendance policy. Fed Ex further argued Hollis could not prevail on his retaliation claim because he did not engage in "protected activity" as defined under FEHA.

In opposition to Fed Ex's motion, Hollis argued a triable issue of material fact existed as to whether Fed Ex was aware he suffered from a disability that limited a major life activity. Hollis argued Fed Ex was made aware of his disability and the effect it had on his ability to work when Jackson observed him struggling to perform his duties and escorted him to the company's wellness center on March 13, 2012, and when he submitted Dr. Abayaratna's notes recommending that he remain off work due to his lower back pain. He further argued a triable issue of material fact existed as to whether Fed Ex failed to reasonably accommodate his disability. According to Hollis, Fed Ex should have offered him a protected leave of absence that would have prevented any of his absences between March and June 2012 from counting against his attendance record. He also contended a triable issue of material fact existed as to whether Fed Ex retaliated

7

against his exercise of rights under FEHA. He argued his request for a protected leave of absence qualified as "protected activity" under FEHA, and that Fed Ex's denial of that request constituted "retaliation" under the statute.

The trial court granted Fed Ex's motion for summary judgment. Although the court disagreed with Fed Ex that, as a matter of law, Hollis was not disabled while he was absent from work, it found Fed Ex was never aware of any disability Hollis may have suffered before it terminated his employment. Specifically, it found Hollis failed adequately to inform Fed Ex about any disability he may have suffered while he was on leave. It reasoned that prior to his termination, Hollis never informed anyone at the company about the true nature or severity of his condition or any of the symptoms and limitations resulting from that condition. It observed that none of the notes submitted by Dr. Abayaratna before Hollis was terminated provided such information; rather, the notes simply recommended that Hollis remain off work for specific periods of time due to his "lower back pain." The court also observed that Hollis never requested to be placed on protected leave prior to his termination. With respect to Dr. Abayaratna's statement that Hollis was temporarily totally disabled and had been diagnosed with severe lower back pain and sciatic neuralgia, the court found that information had not been provided to Fed Ex until after Hollis was terminated. The court concluded that since Fed Ex was not aware of any disability before it terminated Hollis's employment, it could not be held liable for any claims under FEHA.

The court entered judgment in Fed Ex's favor, and Hollis timely appealed.

## DISCUSSION

Hollis contends the trial court erred in granting Fed Ex's motion for summary judgment because a triable issue of material fact exists as to whether Fed Ex was aware he was disabled before it terminated his employment. Fed Ex argues the trial court properly granted summary judgment because Hollis failed to provide sufficient information to put the company on notice that he was disabled before it terminated his employment.

8

## I.       Standard of Review

On appeal from a grant of summary judgment, we review the record and the ruling of the trial court de novo.  (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)  We consider all the evidence set forth in the moving and opposition papers, except that evidence to which objections have been made and sustained.  (*Ibid.*)  However, "[w]e do not resolve conflicts in the evidence as if we were sitting as the trier of fact.  [Citation.]  Instead, we draw all reasonable inferences from the evidence in the light most favorable to the party opposing summary judgment.  [Citation.]"  (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 961 (*Nadaf-Rahrov*).)

A grant of summary judgment is proper if the evidence set forth shows there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc. § 437c, subd. (c); see also *Guz*, *supra*, 24 Cal.4th at p. 334.)  A triable issue of fact exists when the evidence reasonably permits the trier of fact, applying the applicable standard of proof, to find the underlying fact in favor of the party opposing the motion.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. Omitted (*Aguilar*).)  A material issue of fact may not be based on inferences, if contradicted by other inferences or evidence.  (Code Civ. Proc., § 437c, subd. (c); *Aguilar*, *supra*, 25 Cal.4th at p. 856.)  "[T]he court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact," but must determine the question of law of "what any evidence or inference could show or imply to a reasonable trier of fact."  (*Aguilar*, *supra*, 25 Cal.4th at p. 856.)  Where the evidence and inferences would allow a reasonable trier of fact to find the underlying fact in favor of a plaintiff in accordance with the applicable standard of proof, then a defendant's motion for summary judgment must be denied.  (*Id.* at p. 850; accord, *Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 877 (*Faust*).)

For summary judgment in the employment discrimination context, "'"[i]f the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the

plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing. . . ." [Citation.]'" (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344 (*Arteaga*); italics removed.)

## II. Disability Discrimination

Hollis contends Fed Ex discriminated against him on the basis of a physical disability, namely his back condition and sciatica, when it terminated his employment. Under section 12940, subdivision (a), it is illegal for an employer to discharge an employee because of his physical disability. To establish a prima facie case of disability discrimination, a discharged employee must establish that (1) he suffered from a disability; (2) he was otherwise qualified to perform his job; and (3) he was subjected to an adverse employment action because of his disability. (*Arteaga*, *supra*, 163 Cal.App.4th at pp. 344-345.) Once the employee establishes a prima facie case of discrimination, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the adverse employment action. (*Id*. at p. 343.) The burden then shifts back to the employee to establish that the employer's proffered justification is mere pretext for discrimination. (*Ibid*.)

Under FEHA, "'physical disability' includes having a physiological disease, disorder, or condition that, by affecting the neurological or musculoskeletal body systems, special sense organs or skin, 'limits' a 'major life activity.' (§ 12926, subd. (k)(1)(A), (B).) 'Limits' is synonymous with making the achievement of a major life activity 'difficult.' (*Id.,* subd. (k)(1)(B)(ii).) 'Major life activity' is construed broadly and includes physical, mental, and social activities, and working. (*Id.,* subd. (k)(1)(B)(iii).) '"[W]orking" is a major life activity, regardless of whether the actual or perceived working limitation implicates a particular employment or a class or broad range of employments.' (§ 12926.1, subd. (c).)" (*Arteaga*, *supra*, 163 Cal.App.4th at p. 345.) "An adverse employment decision cannot be made 'because of' a disability, when the disability is not known to the employer." (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 236 (*Brundage*).)

The trial court found Fed Ex could not be held liable under any of Hollis's FEHA claims because the company was not aware that Hollis suffered from a disability before it terminated his employment. As noted above, an employee cannot be discriminated against on the basis of his disability when his disability is not known to his employer. (*Brundage*, *supra*, 57 Cal.App.4th at p. 237; *Avila v. Continental Airlines, Inc*. (2008) 165 Cal.App.4th 1237, 1247 (*Avila*).) "[A]n employer 'knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation. The employer need only know the underlying facts, not the legal significance of those facts." (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 887 (*Faust*).) "Evidence that a decision maker learned of a plaintiff's disability *after* deciding to take adverse employment action is not probative of whether the decision maker was aware of the plaintiff's disability when he or she made the decision. Such evidence is irrelevant to determining whether the decision maker acted from a discriminatory animus." (*Avila*, *supra*, 165 Cal.App.4th at p. 1251; italics in original.)

Fed Ex argues the trial court properly granted summary adjudication as to Hollis's disability discrimination claim because it had a legitimate reason for terminating his employment: Hollis's poor attendance record that led to the company's issuance of three attendance deficiency notices in a 12-month period. Specifically, Fed Ex argues its decision to terminate Hollis was premised solely on its application of its neutral attendance policy because it had no knowledge of any disability Hollis may have suffered before it terminated his employment.

Fed Ex contends Hollis failed adequately to inform the company that he was suffering from a qualifying disability before it terminated his employment. The company argues the notes it received from Dr. Abayaratna prior to Hollis's termination were inadequate to put the company on notice that Hollis was suffering from a disability because those notes do not: (1) specify a diagnosis or prognosis of Hollis's condition;

11

(2) indicate Hollis was unable to perform any or all of his job duties; or (3) specify any work restrictions or physical limitations Hollis was subject to while he was on leave. At the time it terminated Hollis, the company believed his condition was temporary and did not prevent him from performing his job duties during his absence. Fed Ex argues this conclusion is further supported by the fact Hollis was ultimately cleared to work with no limitations or restrictions before he was terminated, and Hollis made no claim that he was disabled or subject to limitations until after he was terminated.

Hollis contends Fed Ex was aware of his disability before he was terminated. He cites the fact that Jackson observed him unable to perform his job duties because of his back pain the day before he stopped reporting to work. He also cites Dr. Abayaratna's notes, which recommend he take time off work because he was suffering from "lower back pain." Hollis contends this information sufficiently informed Fed Ex he was disabled under FEHA because it demonstrated that he was suffering from a physical condition (back pain) that limited a major life activity (the ability to work). We disagree.

The trial court properly found Fed Ex was not aware Hollis was disabled at the time it terminated his employment. "While knowledge of [a] disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts." (*Brundage, supra,* 57 Cal.App.4th at p. 237.) Vague or conclusory statements that reveal only an unspecified incapacity are insufficient to make the employer aware of its obligations under FEHA. (*Avila, supra,* 165 Cal.App.4th at p. 1249.) Here, the facts known to Fed Ex at the time it terminated Hollis's employment support a reasonable belief that Hollis was only temporarily injured, and not disabled, while he was absent from work.

At the time Hollis left work on March 13, 2012, he complained to Jackson that he could not continue working that day because he was experiencing severe pain in his back and legs. This was the first time that Jackson, or any other supervisor at Fed Ex, had observed Hollis suffering from back and leg pain at work. Hollis had never provided the company with documentation or other information prior to this incident demonstrating he suffered from such pain. Indeed, he testified he never told anyone at Fed Ex that he

12

suffered from a back condition, or that he could not otherwise perform his job, prior to March 13, 2012. Further, he had never been absent, or at least never disclosed that he had been absent, because of his pain. Rather, he had been unexpectedly absent on numerous occasions throughout his period of employment for medical issues concerning his son and mother, as well as for reasons unrelated to his back condition. There is no evidence in the record that prior to the March 13, 2012 incident, Hollis's supervisors observed Hollis suffering pain in his back and legs, or that they were otherwise aware he had a back or sciatic nerve condition.

The fact Hollis submitted doctor's notes recommending he remain home from work between March and June 2012 does not establish Fed Ex was aware he was disabled during that period. As noted, vague or conclusory statements revealing an unspecified incapacity are insufficient to put an employer on notice of a disability. (*Avila*, *supra*, 165 Cal.App.4th at p. 1249.) Dr. Abayaratna's notes do nothing more than merely identify an unspecified incapacity.

For example, three of the notes simply state Dr. Abayaratna "recommended" Hollis remain off work; however, those three notes do not state Hollis was suffering from any type of physical condition or injury or provide any reason why Hollis needed to remain off work. The other three notes Hollis submitted were also insufficient to put Fed Ex on notice of any disability. Although they indicate Hollis was experiencing "lower back pain," they too only recommend Hollis remain off work. They do not state that Hollis was unable to work, or that he was able to work but only under certain conditions or with certain limitations. In addition, none of the six notes include any information concerning the status or progress of Hollis's back pain. They all either state Hollis was experiencing "lower back pain" or provide no information concerning his physical condition. They do not indicate whether the condition was improving, deteriorating, or remaining the same.

Finally, the fact that Hollis was cleared to work on June 20, 2012 without any restrictions supports the conclusion Fed Ex believed he had been only temporarily injured, and not disabled, before the company terminated his employment. Both Hollis

13

and Dr. Abayaratna testified that when Hollis was cleared to work on June 20, 2012, he was no longer subject to any work restrictions. Although Dr. Abayaratna's letter sent to Fed Ex on July 5, 2012 stated Hollis was in fact subject to unspecified "minimal" restrictions, that information was not known to Fed Ex when it decided to terminate Hollis's employment. Fed Ex was not made aware of that information until Hollis sent the company Dr. Abayaratna's letter after he was terminated. (See *Avila*, *supra*, 165 Cal.App.4th at p. 1251 [information addressing the disability received after the employer's adverse employment action is not probative as to whether the employer knew the employee was disabled before taking such action].) Accordingly, from the time Hollis began his leave of absence up to the time he was fired, Fed Ex was never aware that he was ever subject to work restrictions. Even after Fed Ex suspended Hollis on June 20, 2012 for his deficient attendance, Hollis never attempted to inform Fed Ex he had been disabled or was subject to restrictions before his employment was terminated. When information necessary to give notice of a disability, such as the existence of the disability or the disability's corresponding restrictions, is not obvious to the employer, it is the employee's responsibility to bring that information to the employer's attention. (*Scotch v. Art Institute of California-Orange County, Inc.* (2009) 173 Cal.App.4th 986, 1013 (*Scotch*).) Hollis did not fulfill that responsibility here.

Hollis relies on *Faust*, *supra*, to argue the information he provided Fed Ex put the company on notice of his disability. In *Faust*, the plaintiff was placed on disability leave by his psychiatrist after he suffered panic attacks and severe anxiety at work after his coworkers discovered he had accused them of stealing from their employer. (*Faust*, *supra*, 150 Cal.App.4th at pp. 869-870.) Shortly before his period of disability leave expired, the plaintiff consulted a chiropractor for treatment of severe back pain he had been experiencing while on leave. (*Id*. at p. 870.) The chiropractor submitted to the plaintiff's employer a medical certification form, which recommended the plaintiff engage in physiotherapy, chiropractic therapy and rest, and stated: "'[t]he patient is unable to perform regular job duties [for one month].'" (*Ibid*.) The chiropractor did not

14

fill out the form's "Authorization for Absence" section or list any work restrictions. (*Id*. at p. 871.)

The day after the chiropractor submitted the certification form, the plaintiff's employer tried to contact the plaintiff. (*Faust*, *supra*, 150 Cal.App.4th at p. 870.) The employer believed the form did not clear the plaintiff from work because it was not executed by a physician or medical doctor, it did not explicitly authorize plaintiff's absence from work, and it did not list any medical restrictions. (*Ibid*.) The employer tried contacting the plaintiff several times by phone and mail. (*Ibid*.) The plaintiff never returned the employer's calls or responded to the employer's letter, but plaintiff's wife told the employer it could discuss the letter with her, the plaintiff's doctor, or the plaintiff's attorney. (*Ibid.*) The employer never discussed its concerns about plaintiff's absence with the plaintiff's wife, attorney or doctor. (*Ibid*.) Several weeks after receiving the chiropractor's letter, and while the plaintiff was still on leave, the employer terminated the plaintiff's employment. (*Id*. at p. 872.)

The plaintiff sued the employer for disability discrimination and retaliation under FEHA. (*Faust*, *supra*, 150 Cal.App.4th at p. 872.) The employer filed a motion for summary judgment, which the trial court granted, finding in part that the employer was not aware of the plaintiff's disability. (*Id*. at pp. 872-876.) The court of appeal reversed, holding that the employer was aware of the plaintiff's back condition. (*Id*. at pp. 886-887.) The court held that the chiropractor's statement that the plaintiff was "unable to perform regular job duties," coupled with the recommendation that the plaintiff remain off work, put the employer on notice of the plaintiff's disability. (*Id*. at p. 887.)

Hollis's case is distinguishable from *Faust* in two respects. First, Dr. Abayaratna's notes do not indicate whether Hollis was capable of performing his job. Unlike the notes in *Faust*, Dr. Abayaratna's notes do not state that Hollis was unable to perform his job duties, or that he was somehow restricted in performing his regular job duties. Rather, the notes only recommended that Hollis remain off work. Even with a doctor's recommendation to refrain from working, Hollis still may have been able to perform all of his job duties despite his back pain. As noted above, when information

15

concerning the employee's ability to perform his job is not obvious to the employer, it is the employee's responsibility to bring that information to the employer's attention. (*Scotch*, *supra*, 173 Cal.App.4th at p. 1013.)

Second, unlike the plaintiff in *Faust*, Hollis returned to work before his termination without any medical restrictions or other signs of being disabled. When Hollis returned to work, it appeared that he had a clean bill of health. Accordingly, it was not unreasonable for Fed Ex to believe at the time it terminated Hollis's employment that Hollis had missed work because of a temporary injury, and not a disability. (See *Avila*, *supra*, 165 Cal.App.4th at p. 1248 [knowledge of a disability will not be inferred unless it is the only reasonable interpretation of the known facts]; see also *Winarto v. Toshiba American Electronics Components* (9th Cir. 2001) 274 F.3d 1276, 1291 [due to the temporary nature of the employee's back and ankle injuries, the fact that she submitted two doctor's notes excusing her from work because of the injuries did not prove that her employer perceived her as disabled when she introduced no other evidence demonstrating the employer was aware that she was disabled, and not just temporarily injured].)

In light of the foregoing, we conclude the trial court properly found that Fed Ex had no knowledge of any disability Hollis may have suffered prior to his termination. Since Fed Ex was unaware of any disability, it could not have discriminated against Hollis on the basis of a disability when it terminated his employment. (*Brundage*, *supra*, 57 Cal.App.4th at p. 237; *Avila*, *supra*, 165 Cal.App.4th at p. 1247.) Accordingly, we affirm the trial court's grant of summary adjudication as to Hollis's disability discrimination claim.

III. **Reasonable Accommodation**

Hollis next asserts Fed Ex failed to reasonably accommodate his back injury. He argues the company should have placed him on protected leave to prevent his absences from counting against his attendance record. This claim fails for the same reasons expressed above.

Under section 12940, subdivision (m), an employer must provide a "reasonable accommodation for the known physical or mental disability of an applicant or employee."

An employer's duty to reasonably accommodate an employee's disability is not triggered until the employer knows of the disability. (*Avila, supra,* 165 Cal.App.4th at p. 1253.) The employee is responsible for providing his employer with notice of his disability. (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222 ["Generally, '"[t]he employee bears the burden of giving the employer notice of the disability."'"].) "'"[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge. . . . [Citation.]"'" (*Avila*, *supra*, 165 Cal.App.4th at pp. 1252-1253, quoting *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 950.)

As explained above, Fed Ex lacked knowledge of any disability Hollis may have suffered prior to his termination. Further, Hollis never told Fed Ex that he wanted to be placed on protected leave, even though he knew he was able to do so. Without establishing Fed Ex knew he was disabled or that he desired an accommodation, Hollis cannot establish a claim that his employer failed to accommodate his disability. Accordingly, the trial court properly granted summary adjudication as to Hollis's reasonable-accommodation claim. (*Avila*, *supra*, 165 Cal.App.4th at p. 1253.)

## IV.    Interactive Process

Hollis next contends Fed Ex failed to engage in an interactive process to discuss possible accommodations that could have prevented him from accruing unexcused absences. Although Hollis did not request an accommodation prior to his termination, he asserts Fed Ex was obligated to initiate a discussion about possible accommodations because it was aware Hollis was disabled. Again, this claim fails because Fed Ex was unaware of any disability Hollis may have suffered prior to his termination.

Under section 12940, subdivision (n), it is separately actionable for an employer to fail "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." (§ 12940, subd. (n); *Gelfo v. Lockheed Martin*

17

*Corp.* (2006) 140 Cal.App.4th 34, 54.) "The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively. [Citation.]" (*Scotch*, *supra*, 173 Cal.App.4th at p. 1013.)

Both the employer and the employee are responsible for participating in the interactive process. Typically, the employee must initiate the process "unless the disability and resulting limitations are obvious." (*Scotch*, *supra*, 173 Cal.App.4th at p. 1013.) "'Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, . . . the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.' [Citation.]" (*Ibid.*)

While employed with Fed Ex, including while he was absent and suspended, Hollis never identified for Fed Ex his disability and its resulting limitations. As discussed above, the doctor's notes he submitted simply indicate that Hollis was suffering from lower back pain and that Dr. Abayaratna recommended he remain home from work. None of the notes list any limitations Hollis was subject to, nor do they state that Hollis was unable to perform any of his duties at work. Further, Hollis admitted he never reached out to Fed Ex to request an accommodating leave that would have prevented his absences from counting against his attendance record, despite his awareness of his ability to do so. Fed Ex was not otherwise aware Hollis was disabled and subject to work restrictions. Accordingly, it was not obligated to engage in an interactive process with him. The trial court properly granted summary adjudication as to Hollis's interactive-process claim.

## V. Failure To Prevent Discrimination

Hollis next contends Fed Ex failed to prevent disability discrimination. Specifically, he argues Fed Ex should have reversed his termination once he supplied information explaining that he was disabled with a back injury while he was absent between March and June 2012. This claim fails for reasons similar to those discussed above: because Hollis cannot establish a claim for discrimination as a result of Fed Ex's

lack of knowledge of any disability he may have suffered before it terminated his employment, he cannot prevail on a claim that Fed Ex failed to prevent discrimination. In other words, Hollis cannot succeed on this claim because there was no discrimination to prevent.

Under section 12940, subdivision (k), it is illegal for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." To prevail on a claim for failure to prevent discrimination, a plaintiff must establish three elements: (1) he was subjected to discrimination, harassment, or retaliation; (2) the defendant failed to take all reasonable steps to prevent discrimination, harassment, or retaliation; and (3) the defendant's failure caused the plaintiff to suffer injury, damage, loss, or harm. (*Lelaind v. City and County of San Francisco* (2008) 576 F.Supp.2d 1079, 1103; see also CACI No. 2527.) An employee cannot establish a claim for failure to prevent disability discrimination if he cannot demonstrate he was subject to discrimination on the basis of his disability. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 282, 289 (*Trujillo*) ["'[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, . . . ."]; see also *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1315, 1317 [discussing *Trujillo* and explaining that, before an employer may be held liable for failure to prevent discrimination or harassment under section 12940, subdivision (k), there must be a finding that actionable harassment or discrimination, as defined under FEHA, occurred; otherwise, an employer may be held liable for failing to prevent conduct that is legally permissible].)

As discussed above, the evidence establishes Fed Ex was not aware of any disability Hollis may have suffered prior to his termination. As a result, Fed Ex did not discriminate against Hollis on the basis of a disability. (*Brundage*, *supra*, 57 Cal.App.4th at pp. 236-237.) It follows then that Fed Ex did not breach any duty to prevent discrimination. (*Trujillo*, *supra*, 63 Cal.App.4th at p. 289.) Accordingly, the trial court properly granted summary adjudication as to Hollis's failure to prevent discrimination claim.

19

## VI. Retaliation

Hollis contends his termination was an act of retaliation under FEHA. He argues he was entitled to an accommodating protected leave of absence, and Fed Ex failed to provide such a leave as an act of retaliation. This claim fails because Hollis did not engage in any activity protected under FEHA.

Under section 12940, subdivision (h), an employer may not retaliate or discriminate against an employee who engages in protected activity under FEHA. That subdivision provides: "It is an unlawful employment practice . . . [f]or any employer . . . to discharge, expel, or otherwise discriminate against any person beause the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." (§ 12940, subd. (h).) "Protected activity" under FEHA involves the employee engaging in some type of conduct that opposes, or complains of, the employer's actions based on the employee's reasonable belief that some act or practice of the employer is unlawful. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1043 (*Yanowitz*).)

Hollis did not engage in protected activity under FEHA. Hollis never opposed, or complained of, Fed Ex's employment practices as unlawful prior to his termination. Hollis does not assert that he engaged in such activity before he was fired, and our review of the record reveals no evidence that he engaged in such activity. Accordingly, he cannot prevail on a claim for retaliation under FEHA. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1043.)

## VII. Wrongful Termination

Finally, Hollis contends he was terminated in violation of public policy. Hollis argues a termination that violates FEHA also gives rise to a claim in tort for wrongful termination; he sets forth no independent grounds for his claim of wrongful termination. Accordingly, his wrongful termination claim rises and falls with his FEHA claims. Because Hollis cannot prevail on any of his claims brought under FEHA, he necessarily cannot prevail on his claim for wrongful termination. The trial court properly granted summary adjudication as to this claim.

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.


                                                        IWASAKI, J.[*]


**We concur:**



      **PERLUSS, P. J.**                      **ZELON, J.**

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.