Filed 3/16/21  Mendez v. Stratasys Direct, Inc. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SANDRA MENDEZ, | B292298 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC654471) |
| v. | |
| STRATASYS DIRECT, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

Mancini & Associates, Marcus A. Mancini, Vadim Yeremenko; Benedon & Serlin, Gerald M. Serlin and Melinda W. Ebelhar for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Steward, Jack S. Sholkoff and Julie A. Gladstone for Defendant and Respondent.

————————————

Sandra Mendez appeals the judgment entered after the trial court granted summary judgment in favor of Mendez's former employer, Stratasys Direct, Inc., in Mendez's action for age and disability discrimination and wrongful termination in violation of public policy.  Mendez contends the court erred in concluding she could not establish a prima facie case for disability discrimination and had failed to raise a triable issue of material fact as to whether Stratasys's proffered business reason for the termination of her employment was pretext for unlawful discrimination.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Mendez's Operative First Amended Complaint*

Stratasys, a printing and manufacturing company, uses three-dimensional (3D) printing techniques to make prototypes. Mendez was hired in 2003 as a "finisher" and continued in that role throughout her employment with Stratasys.[1]  As a finisher, Mendez was tasked with sanding, filing, gluing and hammering 3D printed models to customer specifications.  Stratasys terminated Mendez's employment on September 22, 2015 when she was 51 years old.

Mendez sued Stratasys in March 2017.  In her operative first amended complaint, filed May 22, 2017, Mendez asserted claims for actual or perceived physical disability discrimination and age discrimination in violation of the Fair Employment and

---

[1]     Stratasys's predecessor, Solid Concepts, hired Mendez in 2003.  Because the parties refer to Mendez's 12-year tenure with Stratasys throughout their appellate briefs, we do as well.

Housing Act (FEHA) (Gov. Code, § 12940 et seq.)[2] and wrongful termination in violation of public policy.[3]

In support of her claims Mendez alleged she had developed pain in her neck, shoulders and elbows as a result of repetitive work activities. In August 2015 she sought medical treatment for her pain. In early September 2015 she retained counsel and made a workers' compensation claim. Around the same time her supervisor, Carlos Alvarez, began telling staff he wanted to make changes and had begun hiring "new young employees." On September 21, 2015 Alvarez removed a part from Mendez's desk to show to a client before Mendez had finished working on it. The next day she was terminated for having ruined the part. Mendez alleged Stratasys's explanation for her termination—her work relating to the 3D part—was pretext for unlawful disability and age discrimination.

2. *Stratasys's Summary Judgment Motion*

Stratasys moved for summary judgment or, in the alternative, summary adjudication. Stratasys asserted Mendez could not establish a prima facie case for actual or perceived disability discrimination because, by Mendez's own admission, she had not disclosed her neck, shoulder and elbow injuries to her

---

[2] Statutory references are to this code unless otherwise stated.

[3] Mendez's first amended complaint also alleged causes of action for retaliation in violation of FEHA, interference with her right to take a medical leave pursuant to the California Family Rights Act (§ 12945.2 et seq.) and violation of her "right to seek and obtain legal counsel" pursuant to Labor Code section 923. Mendez's appeal does not challenge the court's summary adjudication of those causes of action in Stratasys's favor.

supervisors or to the company's human resources department; her injuries were not apparent or obvious; and none of the individuals involved in the termination decision knew about them. At her deposition, a transcript of which Stratasys included in support of its motion, Mendez admitted she had not disclosed her injuries to Alvarez or to any supervisor. Mendez also testified she had not discussed with anyone at the company that she had filed a workers' compensation claim.

Alvarez and his supervisor, Armen Boyajyan, testified it was Mendez's job as finisher to sand, paint and otherwise finish the printed parts according to client specifications. Before beginning work on a part, a finisher is required to compare the part with the 3D model in Stratasys's computer program to ensure the same details in the model appear on the printed part. If there is anything missing or the measurements are "out of tolerance," the finisher is required to immediately notify the lead finisher or supervisor so he or she can decide whether the part can be repaired or needs to be rebuilt. If, after performing a six-point inspection, the finisher determines the part is within tolerance, the finisher can proceed to performing his or her finishing duties.

On September 21, 2015 a client with a multibillion-dollar project arrived unexpectedly at Stratasys's facility some time between 10:00 and 11:00 a.m. to view the parts for an architectural model Stratasys had promised would be finished the next day. Alvarez took a part from Mendez's desk that she had been working on to show to the client. The part was missing a significant surface detail; other important details had been sanded off in finishing. The client became very upset that the part was not to specifications. Alvarez reported the issue to

4

Boyajyan and to human resources partner Araceli Tarula later that day. According to Alvarez, had Mendez followed procedure and compared the part with the software program, as a finisher is required to do, Mendez, who had started her shift at 6:00 a.m., would have noticed the missing feature and alerted a supervisor long before 10:00 a.m. when the client arrived. She also would not have begun work on the part, let alone sanded down important details. Alvarez told Boyajyan and Tarula that Mendez continued to make basic errors despite several chances to improve and he had lost all confidence in her ability to do the job. Boyajyan and Tarula agreed with Alvarez that Mendez's employment should be terminated. Mendez was fired the next day.

Submitting Mendez's annual employee reviews with its motion, Stratasys described Mendez as a mediocre employee at best, who had never ranked higher than "average" in overall performance in her 12 years of employment and, at times, including as recently as her penultimate performance review in 2013, ranked "below average." In her final 2014 review in which Alvarez ranked her "average" and her quality "satisfactory," Alvarez also noted that Mendez "needs to focus [on] the smaller details that can cause a job to be reworked or delayed."

Stratasys also provided evidence Mendez had received several warnings about her failure to follow procedures. In 2010 she received a written warning for failing to compare a part to the computer program as required: "There was an order that had critical features that she sanded off and had she checked the part properly on [the computer program] she could have avoided this." In August 2011 Mendez was written up for failing to notify a supervisor when there were problems with a part and instead

5

tried to repair the part; her repair destroyed the part and was in "direct violation of company policies." In April 2012 she received another written warning for failing to follow procedures and was told "any similar problem of this nature will lead to immediate termination."

Finally, Tarula testified that from time to time, including in August and September 2015, the company contracted with an employment agency to provide temporary workers for large jobs. Stratasys specified the skills needed, and the agency selected and supplied the workers. Tarula testified Stratasys did not employ the temporary workers. After Mendez's termination her duties were assigned to other finishers. No replacement was hired for Mendez's position between September 2015 and June 2016.

### 3. *Mendez's Opposition to Stratasys's Motion*

In opposing Stratasys's motion, Mendez asserted she could establish a prima facie case for disability discrimination and age discrimination and a triable issue of material fact existed as to whether Stratasys's explanation for termination was pretext for unlawful discrimination.

#### a. *Disability discrimination*

Mendez contended her neck, shoulder and elbow injuries constituted a disability and Stratasys's supervisors knew about them. Although she never disclosed her disability to Alvarez or any other supervisor or human resources employee at Stratasys, Mendez testified she had complained to Alvarez in February 2015 that he was "giving her too much work" and she could injure herself. Mendez claimed she had been afraid to say anything more because she feared she would be fired based on past statements to her. To explain that decision, Mendez related that in 2008, after suffering a small stroke, she experienced difficulty

with her eyesight and needed a magnifying glass for a time to do her job. In 2011 the magnifying glasses were removed from employee workstations, and she was forced to purchase her own to do her job. When Mendez spoke to Tarula regarding warnings Mendez had received and told her of her eyesight issues, Tarula told her that, if she could not give "100 percent to her job," she needed to look for other employment. For Mendez, those incidents served as a warning that, if she reported injuries that affected her ability to work, she would be terminated.

Priscilla Paiz, one of Mendez's coworkers, stated in a declaration submitted with Mendez's opposition papers, "[Mendez] complained to me about having pain for several years." Paiz also declared, "Although many of my other co-workers also complained of pain, everyone was afraid to complain to management out of fear of losing their jobs." Stratasys objected to the latter part of Paiz's statement as irrelevant, without foundation and hearsay. The trial court sustained the objection and excluded that part of Paiz's declaration without identifying the basis for its ruling.

On September 4, 2015 Mendez's workers' compensation counsel sent a letter of representation addressed to Stratasys's "Human Resources Department" and requested information about the company's workers' compensation insurance carrier. Tarula testified the letter would have been directed to human resources vice president Mark Hoffman. Tarula did not know of Mendez's injuries or about any actual or potential workers' compensation claim at the time Mendez was terminated.

b. *Age discrimination*

Mendez testified that in July or August 2015 Alvarez told the finishers there were going to be changes. Soon thereafter,

7

younger workers were hired to work in the finishing department. On September 4, 2015 Mendez was invited by her coworkers to join a group of other finishers in a meeting with human resources personnel. At the meeting the group spoke about some of the finishers' fears of losing jobs to younger workers.

4. *The Court's Ruling Granting Summary Judgment*

The court granted Stratasys's motion for summary judgment. The court ruled Mendez could not establish a prima facie claim of disability discrimination because she had not disclosed her neck, shoulder and elbow injuries to Stratasys and they were not apparent. The court found the evidence undisputed that none of the individuals who participated in the termination decision knew of Mendez's injuries or about any potential or actual workers' compensation claim prior to Mendez's termination.

As for age discrimination, the court found Mendez had satisfied her minimal burden to state a prima facie claim, but concluded Mendez had failed to raise a triable issue of material fact that the explanation offered by Stratasys for Mendez's termination was pretext for age discrimination.

The court entered judgment in favor of Stratasys. Mendez filed a timely notice of appeal.

## DISCUSSION

1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and, viewing the evidence in the light most favorable to the

8

nonmoving party (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618), decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

  2. *Governing Law*

  FEHA prohibits an employer from discriminating against an employee based on the employee's age or disability.  (§ 12940, subd. (a).)  Because discriminatory animus is difficult to prove, the California Supreme Court has adopted the three-stage burden shifting test established by *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*):  The plaintiff at trial "has the initial burden to make a prima facie case of discrimination by showing that it is more likely than not that the employer has taken an adverse employment action based on a prohibited criterion.  A prima facie case establishes a presumption of discrimination.  The employer may rebut the presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory reason.  If the employer discharges this burden, the presumption of discrimination disappears.  The plaintiff must then show that the employer's proffered nondiscriminatory reason was actually a pretext for discrimination, and the plaintiff may offer any other evidence of discriminatory motive.  The ultimate burden of persuasion on the issue of discrimination remains with the plaintiff." (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214-215; accord, *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354-356 (*Guz*).)

  The *McDonnell Douglas* framework is modified in the context of summary judgment.  An employer may move for

summary judgment or summary adjudication of an employment discrimination cause of action by presenting evidence that one or more elements of the prima facie case is lacking, or the employer acted for a legitimate, nondiscriminatory reason. (*Guz, supra*, 24 Cal.4th at p. 355; *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1181-1182.) A legitimate reason in this context is a reason "facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination." (*Guz*, at p. 358, italics omitted; accord, *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861.)

The plaintiff may defeat summary judgment by producing "'substantial responsive evidence'" demonstrating the existence of a "material triable controversy as to pretext or discriminatory animus on the part of the employer." (*Serri v. Santa Clara University, supra,* 226 Cal.App.4th at p. 862.) "[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz, supra,* 24 Cal.4th at p. 361; accord, *Serri*, at p. 862.)

3. *The Trial Court Did Not Err in Granting the Motion as to Mendez's FEHA Claims for Disability and Age Discrimination*

a. *Disability discrimination*

A plaintiff establishes a prima facie case of disability discrimination by providing evidence he or she (1) was disabled or was perceived by his or her employer to be disabled; (2) was capable of performing the essential duties of the job with or without reasonable accommodations; and (3) was subjected to an adverse employment action because of the disability or perceived

10

disability. (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159-160; *Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 236.)[4]

In granting summary judgment for Stratasys, the trial court ruled Mendez could not carry her burden to state a prima facie claim for disability discrimination because the undisputed evidence established that she did not disclose, and her employer did not know, of her neck and shoulder and elbow injuries, and they were not obvious. Accordingly, the court ruled, Mendez could not establish she was fired because of them.

"'[A]n employer "knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation. The employer need only know the underlying facts, not the legal significance of those facts."' [Citation.] 'While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts. "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations."'" (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 592; see *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 313

---

[4] A physical disability under FEHA includes "[h]aving any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that" both affects one or more of the body's major systems and "[l]imits a major life activity." (§ 12926, subd. (m)(1).) Major life activity is "broadly construed" and includes working. (§§ 12926, subd. (m)(1)(B)(iii), 12926.1, subd. (c).) For purposes of its motion for summary judgment, Stratasys conceded Mendez could establish her neck, shoulder and elbow injuries constituted a disability under FEHA.

11

[employee who used a cane and spoke with speech impediment demonstrated prima facie case that employer knew of disability to defeat summary judgment].)

Mendez asserts she raised a triable issue of material fact as to Stratasys's knowledge of her disability, citing evidence she had told Alvarez in February 2015 that he was giving her too much work and she was concerned she would injure herself. Mendez argues a trier of fact could infer from that disclosure she was experiencing existing physical problems due to too much work and needed an accommodation for a disability. As the trial court found, however, Mendez's stated fear of some unspecified potential injury was far too vague to impute to Alvarez knowledge that Mendez was suffering from a disability. (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1167 [vague assertions about unspecified injury are insufficient; "'[p]ut simply, unless there is some evidence that an employer knows an employee is suffering from a disability, it is impossible for an employee to claim he or she was discharged because of it'"]; *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1249 [same].)

Taking out of context language in Justice Werdegar's concurring and dissenting opinion in *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686 (*Roby*), Mendez alternatively argues Stratasys had perfected a culture of discouraging employees from reporting disabilities, thereby allowing Stratasys managers to remain "willfully blind" to them. (See *id.* at p. 772 (conc. & dis. opn. of Werdegar, J.) [evidence employer knew employee suffered from a medical condition yet refused to accommodate it or, at the very least, engaged in a "pattern of willful blindness to the likelihood she was entitled to accommodation" suggested a level

of culpability that supported a greater punitive damages award than the Court found constitutionally permissible].)

We do not disagree with Justice Werdegar's argument an employer's deliberate ignorance of a disabled employee's need for accommodations (in *Roby* it was with respect to the employer's rigid adherence to its attendance policy) is relevant to an assessment of the employer's culpability for discrimination. But that says nothing about imputing knowledge of the employee's disability to the employer, an issue not addressed by either Justice Werdegar or the *Roby* Court: Application of a corporate policy to an employee with a known disability, as occurred in *Roby*, is a far cry from imposing liability on an employer who does not know about an employee's disability. Moreover, Mendez adduced no admissible evidence to support the existence of such a culture at Stratasys. To be sure, in her declaration in support of Mendez's opposition papers, Paiz stated, "[E]veryone was afraid to complain to management out of fear of losing their jobs." But the trial court properly excluded that part of Paiz's statement as inadmissible hearsay.[5] Moreover, without some evidence that the

---

[5] In her opening brief's factual narrative, but not as a separate point under a separate heading or subheading as required by California Rules of Court, rule 8.204(a)(1)(B), Mendez asserts the trial court abused its discretion in sustaining Stratasys's objection to Paiz's statement. She contends, in part, although unquestionably hearsay, the statement was admissible under Evidence Code section 1250 as evidence of a statement of the declarant's then existing state of mind "offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action." That argument is misplaced. The statement excluded by the trial court did not concern Paiz's state of mind, but that of "everyone"

13

purported fear of reporting was due to Stratasys's actions or statements, Paiz's claim of a workforce-wide fear of disclosing disabilities does not provide any basis to impute knowledge of Mendez's disability to Stratasys. Significantly, there was no evidence that anyone had in fact been terminated or suffered any adverse employment circumstance for disclosing a disability, including Mendez, who stated she disclosed her eyesight disability in 2008.[6]

Mendez argues her testimony alone is sufficient to establish Stratasys's calculated strategy of discouraging employees from reporting disabilities. In connection with meetings she had with Tarula regarding warnings she received for poor work performance, Mendez asserts she mentioned to Tarula in 2011 she still had some eyesight difficulties and Tarula told her she needed to give "100 percent" or look for another job. Mendez also cites Stratasys's removal of magnifying glasses from all employee workstations in 2011 as evidence of its indifference to her health issues. (Mendez acknowledged Stratasys had allowed her to use her own magnifying glass until her vision healed.) But once again, even interpreting the evidence in the

_____

at the company. Even if an adequate foundation had been proffered for Paiz's purported knowledge of other individuals' collective state of mind, her description of it is far outside the ambit of section 1250.

[6] The court also found none of the decision makers knew that Mendez had filed a workers' compensation claim. (See *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 74 [summary judgment proper where no evidence that decision makers knew employee had previously filed a grievance].) Mendez has not challenged that finding.

light most favorable to Mendez, Stratasys's alleged indifference to Mendez's eyesight injury in 2011 fails to make a prima facie case of the company's knowledge of her neck, shoulder and elbow injuries in 2015 or suggest Stratasys precluded, even indirectly, Mendez from reporting those injuries. The court did not err in concluding Mendez could not state a prima facie claim for disability discrimination.

       b. *Age discrimination*

A plaintiff establishes a prima facie case of age discrimination by providing evidence he or she (1) was a member of a protected class, that is, a person over 40 years of age (Cal. Code Regs., tit. 2, § 11074); (2) was qualified for the position he or she sought or was performing competently in the position he or she held; (3) suffered an adverse employment action, such as termination or demotion; and (4) some other circumstance suggesting a discriminatory motive, which can include being replaced by a significantly younger person. (*Guz, supra*, 24 Cal.4th at p. 355; *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 378.)

The trial court ruled that, while Mendez satisfied her minimal burden to establish a prima facie case for age discrimination, she had not raised a triable issue of material fact that the termination was motivated by age-related animus.

Mendez contends she raised a triable issue of pretext by providing evidence her managers had lied about the reason she was fired. (See *Guz, supra,* 24 Cal.4th at p. 384 [employer's false explanation for termination decision may be evidence explanation was pretext for unlawful discrimination]; see also *Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133, 147 ["[i]n appropriate circumstances, the trier of fact can reasonably

15

infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose"].) Mendez states she was told in her termination meeting she had ruined a part. However, the undisputed evidence established the part was defective when printed, before she began working on it. When Stratasys was faced with this evidence in this litigation, Mendez asserts, it changed its justification and insisted it fired Mendez for working on the defective part and not alerting her supervisor about the defect. These shifting explanations, Mendez argues, raised the specter of pretext sufficiently to defeat summary judgment.

Mendez's testimony that Alvarez told her she had ruined a part is fully consistent with Stratasys's explanation in its moving papers that Mendez had both failed to alert her supervisor to the defect in the part and then further damaged it by working on it. Accordingly, there is no evidence of incompatible explanations to support an inference of pretext and intentional discrimination. (See *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 815 ["[r]easons given by employer for termination are 'not incompatible, and therefore not properly described as "shifting reasons,"'" when they involve the same central theme; "[i]t is the substance of the reason provided, not the word choice, which is critical"]; *Nidds v. Schindler Elevator Corp.* (9th Cir. 1996) 113 F.3d. 912, 918 ["'[l]ack of work'" and "lack of seniority and poorer performance relative to other mechanics" are not incompatible and are insufficient to raise a genuine issue of fact as to whether employer's reasons for layoff were pretextual]; cf. *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 716 [ample evidence of pretext to defeat summary judgment when employer "never rested on a single

16

coherent explanation for its firing of [employee] and [when] several if not all of its explanations were, to put it mildly, questionable"].)

Mendez's suggestion her continuous salary increases over the years and "satisfactory" employment reviews raise a triable issue of material fact that her work performance was not the motivating factor for her termination (see *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 479 [pretext may be inferred from the terminated employee's job performance prior to termination]) is also without merit. If anything, those reviews support Stratasys's explanation that Mendez was terminated for making a significant error after having been given several chances to improve. Nothing about those reviews remotely suggests Stratasys was lying about its termination decision, let alone that its explanation was pretext for age-based disability discrimination.

In sum, apart from an observation that temporary employees hired to manage workload were younger than she, Mendez provided no evidence to suggest Stratasys's explanation for the employment decision was pretext for age-related animus. The court did not err in summarily adjudicating this claim. (See *Guz, supra,* 24 Cal.4th at p. 362 [summary judgment for the employer is appropriate where, "given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred"]; *Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 426 [same].)

17

4. *The Court Did Not Err in Granting the Motion as to Mendez's Claim for Wrongful Termination in Violation of Public Policy*

Because Mendez's FEHA claims fail, so too does her claim for wrongful termination in violation of public policy, which was based on FEHA violations.

## DISPOSITION

The judgment is affirmed. Stratasys is to recover its costs on appeal.

PERLUSS, P. J.

We concur:

FEUER, J.

McCORMICK, J.[*]

---

[*]    Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.